ELEANOR KNAGENHJELM *vs.* R. I. HOSPITAL TRUST CO., Adr., *d. b. n. c. t. a.*, et al.

JUNE 17, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Voluntary Trust.*

Evidence considered and held to establish a voluntary trust.

*(2)   Voluntary Trust.*

The words "I hereby declare to be held in trust" show an intention to give the beneficial interest *in præsenti*, and such beneficial interest having been created, the character of the trust is not changed by the fact that the beneficiary was not entitled to receive possession of the trust property until the death of the donor.

*(3)   Voluntary Trust.   Intent.*

The intent to create a trust is the essential thing; this intent must be expressed and must be clearly established by proof, the nature of which naturally varies in different cases.

*(4)   Voluntary Trust.   Dividends.   Interest.*

On a bill in equity to establish a trust, where it appeared that respondent banking corporation had invested the dividends received from the *res* in certificates of deposit, on which four per cent. the highest rate of interest allowed on any such deposit was credited by respondent.

*Held*, that the action of respondent was not improper, but it should have invested the interest as it fell due and consequently it was chargeable and should pay interest at such rate compounded semi-annually.

*(5)  Voluntary Trust.  Equity.  Counsel Fees.*

On a bill in equity to establish a trust, respondent is not entitled to counsel fees to be paid out of the fund.

BILL IN EQUITY to establish trust.  Heard on appeals of both parties and cross appeal of complainant sustained.

STEARNS, J.  This is a suit in equity brought by the complainant, a citizen of Norway, against the respondent corporation as administrator *d. b. n. c. t. a.* of the estate of Theodore M. Davis and as trustee under a deed of trust made by Davis to the respondent.

The bill asserts the right of complainant to 422 shares or interests in a corporation, Keweenaw Land Association, Limited, each in the name of Theodore M. Davis, Trustee, which came into the possession of respondent as administrator after the death of Mr. Davis, and the relief sought is that complainant may be declared to be the owner of said certificates at the death of Mr. Davis, and entitled to receive all income derived therefrom since that time and that respondent be required to transfer and deliver to complainant said certificates and to account for all dividends and profits received, with interest.  Complainant bases her claim upon a written declaration of trust, also upon a subsequent deed of assignment made by Mr. Davis.

In its answer the respondent denies the right of complainant to the stock, and claims the right to hold the same as a part of the remainder of the personal estate bequeathed to the respondent as trustee, by said Davis.

The cause was heard by a justice of the Superior Court on bill, answer, replication and proof and a final decree was entered in said court awarding to complainant the 422 interests and the dividends and interest received since the death of Mr. Davis; the respondent, it was held, was entitled to have counsel fees paid out of the fund.

From this final decree the respondent and complainant have appealed.  The effect of the respondent's appeal is to raise the question of the right of the complainant to relief

as prayed, and the effect of the cross appeal of the complainant is to raise the questions of the right of the respondent to counsel fees out of the fund and of the amount of interest to be allowed by said final decree.   By agreement of counsel the two appeals were heard together and the questions raised thereby will be considered together.

The essential facts are not in dispute.   Mr. Davis was a man of large wealth who had retired from the active practice of the law and settled in Newport.   He was married but had no children.   For many years he had been the friend of complainant's father and had been associated with him at different times in business and legal matters.   The complainant, whose name before marriage was Eleanor S. Wilson, from her early childhood had been a particular favorite of Mr. Davis.   So strong was his affection for the child, that he sought the consent of her parents to adopt her legally as his daughter.   Complainant's parents would not consent, but did allow their daughter to spend her summers at Newport and to travel extensively with Mr. Davis and his family.   Mr. Davis was generous in his gifts to his relatives and friends, and enjoyed giving freely and often to those for whom he cared.

In 1894 the complainant received a proposal of marriage from Mr. Knagenhjelm, who at the time was in the diplomatic service of Norway and a temporary resident of this country.   Under the rules of his government Mr. K. was not permitted to marry without a substantial independent income in addition to his salary.   In order that this obstacle to the marriage might be removed, Mr. Davis after an interview with Mr. K. in Newport in July, 1895, told complainant that he had arranged everything with Mr. K. and that she should have $5,000 a year and the engagement was then at once announced by Mr. Davis, at a dinner in his own house. On the same day, or shortly thereafter, Mr. Davis, at his residence in Newport, signed a declaration of trust in the presence of a witness.   The document, which is in the handwriting of Mr. D. is as follows:

(1)                                    "Newport, R. I., July 16–1895

The four hundred and ninety seven (497) 'Interests in the Capital of the Keweenaw Association Limited' which stands in my name as Trustee, and Certificate for which I herewith enclose, I hereby . declare ,to be held in trust for Eleanor S. Wilson, and in case of my death, she surviving me, are to be delivered to her as her property, and duly Transferred to her; or as she may direct. ·

Witness                              THEO M DAVIS

JOHN R. PROCTER JR."

On the same day he indorsed in blank two certificates in the association, standing in his name as trustee, numbered A 77 and A 78, for 100 and 397 interests respectively, and placed them together with the declaration of trust in an envelope upon which he wrote the following inscription: "497 shares of 'Interests in the Capital of the Keweenaw Association Limited' Held in trust for Eleanor S. Wilson, daughter of Nath. Wilson Esq of Washington, D. C. To be delivered to her, she surviving my death. Theo M Davis." This envelope was placed and . kept in Mr. Davis' safe deposit in the Newport Trust Co., where it was found shortly before his death. At some time, which has not been definitely fixed, the word "ninety" in the declaration was scratched out and the words "Four hundred forty seven (447) T M Davis," were written by Mr. Davis above and before the word "Interests" and on the envelope the number "497" was scratched out and the number "447" was written above it.

Complainant was married early in September, 1895. At the time of the wedding Mr. Davis told complainant he had made the trust for her benefit, that it was his wedding present to her and that the Keweenaw interests he held in trust for her were in his safe deposit box in Newport. Mrs. Knagenhjelm testifies that often thereafter Mr. Davis on different occasions told her not to worry. over the future, that he had created a trust in these interests for her and also

on several occasions he referred to the trust in his letters to her. He always referred to the number of interests as 500, and complainant did not know that the number was reduced by him to 422 interests or his reason for doing this.

Two of the dividends on the interests paid after the date of the marriage were deposited by Mr. D. in complainant's bank account. Complainant and her husband then went abroad to live and thereafter the dividends were deposited to Mr. Davis' own account and the fact that the dividends were from the trust interests was noted in the deposit book. Mr. D. sent to complainant regularly $5,000 a year and subsequently increased the amount of the allowance to $10,000. Complainant was always told that the dividends were taken into consideration in making the allowance. Mr. D. made further provision for complainant in his will and so informed her, but she was always made to understand that the provision for the Keweenaw interests was separate and apart and was additional to any benefit she was to receive by the terms of his will.

In 1902 Mr. K. was seriously ill and as a consequence was unable to continue in the diplomatic service. By the advice of Mr. D., and at his expense, complainant made a change of residence in the hope that her husband would be benefited thereby. Mr. K. did not improve but failed steadily in health and finally died in 1907. Mr. D. during this period continued to visit the family whenever he went abroad and at his suggestion complainant incurred many additional expenses, payment for which was made by Mr. D. In October, 1902, Mr. D. at the office of his attorney, Mr. Parsons, in New York City, signed and acknowledged a deed of assignment whereby for the consideration, as stated therein, of his love and affection for Mrs. Eleanor K. and of one dollar to him paid by her, he gave and presented to her "Five hundred (500) rights of the Keweenaw Association, Limited, now standing in my name in trust for her." After executing this deed, Mr. D. took it in his hand, stepped out of his attorney's private office into the outer office and

there delivered it to the son and legal associate of his attorney. The son placed the deed in an envelope which had been used to contain Mr. D.'s wills and which then bore the indorsement, "Will of Theodore M. Davis and codicils," and wrote on the envelope, "Also assignment of certificate of T. M. D.," and placed the envelope with its contents in the safe of the office, where it remained until after the death of Mr. D. in 1915.

Mr. D. told complainant when he saw her again in 1903 that he had given her the 500 interests and that his attorney, Mr. Parsons, had the papers and thereafter when speaking to her in regard to the interests he referred to the interests as hers, rather than as he had previously done, as held by him in trust for her.

This deed, which was made seven years after the declaration of trust, by its terms affirms the existence of the trust and was intended to enlarge and not decrease the interest of the beneficiary in the trust estate.

Respondent claims that this assignment is invalid, as the instrument purports to make a gift; and that the action of Mr. D. in delivering the deed to the son of his attorney, did not constitute a legal delivery for the benefit of complainant. It is not necessary to consider this deed of assignment in detail or its legal effect, as we are of the opinion that prior to its execution Mr. D. had created a valid trust of the interests, by the provisions of which the complainant is now entitled to the relief prayed for.

On July 16, 1895 (the date of the trust instrument), Mr. D. owned a large number of interests of the association which stood in his name individually; in addition thereto he had one certificate for 397 interests, one for 100 interests and two each for 25 interests, a total of 547 interests, which stood in the name of "Theodore M. Davis, Trustee." The certificates for 397 and 100 interests were indorsed in blank on July 16, 1895, and placed in the envelope for the trust for 497 interests. On April 7, 1896, Mr. D. withdrew from the envelope and transferred to the father of complainant the

certificate for 100 interests, and complainant's father later transferred the same to complainant.   The suggestion is made, and it is probable, that at the time Mr. D. placed the two trust certificates, each for 25 interests, in the envelope as a partial replacement of the 100 interest certificate which had been withdrawn and at the same time changed the statement of the number of shares in the trust instrument and on the envelope from 497 to 447.   In 1908 the Keweenaw Association, Limited, was reorganized, new certificates were issued and to Mr. D., in lieu of the 447 interests then standing in his name as trustee, was issued a new certificate to him as trustee for 447 interests.   In 1909, at the request of Mr. D., in exchange for said certificate for 447 interests, the association issued to Mr. D. certificates number B108 for 397 interests, number B109 for 25 interests and a third certificate for 25 interests.   Said new certificates were issued in the name of Mr. D. as trustee, and were the only certificates so issued then outstanding.   In 1912 Mr. D. withdrew the said third certificate for 25 interests from the envelope and transferred the same to Daniel Jones, his butler.   This last conveyance was made for the reason, as given by a witness, that Mr. D. at the request of Jones had invested some of his savings in the stock of the association. The 422 interests remaining in the envelope are now claimed by complainant, who, without prejudice to her legal rights, waives claim to the 75 shares which have been taken from the original 497 interests, because, as she states, on account of Mr. D.'s great kindness and generosity to her, she does not care to question the legality of his acts, nor to seek contribution from his estate.

The respondent's contention is that in order to distinguish a voluntary trust on the one hand and an intent or attempt to make a testamentary disposition on the other hand, there must be some transfer of present interest to the donee; that the so-called declaration of trust did not transfer any present beneficial interest to Mrs. K. but was an attempt to make a gift to take effect upon the death of the donor and

consequently was void because it was not executed as a will; that the vital question in regard to the declaration of trust is not the intent of Mr. Davis but whether or not he did enough to "execute" the trust.

(2)    Respondent has cited numerous cases from different jurisdictions showing that the authorities are not uniform in the requirements held to be necessary to establish a voluntary trust. Without attempting to discuss or to differentiate the different decisions we think the law as stated in *Ray* v. *Simmons, Admr.*, 11 R. I. 266 (1875), is decisive of the case at bar and we see no reason either on principle or authority to depart from the law as thus established in this State.

In the *Simmons* case one Bosworth made a deposit for his step-daughter in a savings bank, in his own name as trustee, and received from the bank a bank book in which the account was entered as a trust account. At different times additional deposits were made by Bosworth to the trust account and all the dividends were credited to the account as they accrued, except one which was paid to Bosworth. The bank book was shown by Bosworth to his step-daughter but was kept by the wife of Mr. Bosworth in a box where the bank books of all the three members of the family were kept. The book was taken by Bosworth several times to the bank to have the interest entered. For the defendant it was claimed that no effectual trust was created, as Bosworth by keeping possession of the book always kept and intended to keep control over the deposit for his own use, and did in fact so control it by receiving the dividend which was paid to him. It was held that the trust was completely constituted; that the bank book was given by the bank to him as trustee and as trustee he properly retained possession of it; that although Bosworth might have declared himself more explicitly all was done which the claimant could ask unless she desired to have the money paid or transferred to her, which, as the court said, would not be constituting the trust, but carrying it into effect and discharging it. At p. 268 the

court, speaking through DURFEE, C. J., said: "A person need use no particular form of words to create a trust, or to make himself a trustee. It is enough if, having the property he conveys it to another in trust, or, the property being personal, if he unequivocally declares, either orally or in writing, that he holds it *in præsenti* in trust, or as a trustee for another." After citing authorities, the court continues: "And the creation of the trust, if otherwise unequivocal, is not affected by the settlor's retention of the instrument of trust, especially where he is himself the trustee." The trust having been once created, subsequent declarations of the creator of the trust, which, if true, tended to prove that the fund was claimed by Bosworth as his own, could not have any legitimate effect upon the trust and this was true also in regard to the withdrawal of the dividend.

In the case at bar we think the facts in support of the trust are stronger even than in the *Simmons* case. Respondent calls our attention to certain statements of Mr. Davis made after the execution of the deed of trust, to his acts in taking and disposing of some of the stock originally dedicated to the trust and to his conduct in regard to the dividends. Regarded alone and without reference to the admitted facts, a doubt perhaps might be raised in regard to the donor's intentions, but considered as they properly should be in the light of the entire evidence in the case they fail to change our conclusion.

The amount of the trust was not large from the point of view of the donor. Considering the relations of the parties and the fact that the donor regularly gave to complainant much more than the amount of the dividends, his failure to give complainant each dividend as it was received is of no particular importance. His actions, if the most unfavorable view be taken, appear to be technical breaches of trust rather than an attempted repudiation or denial of the trust. We are satisfied that the donor intended to give complainant a present interest in the subject matter of the trust. The words, "I hereby declare to be held in trust," show an in-

tention to give the beneficial interest *in præsenti*.   We can not believe that the donor, when he told complainant on her wedding day that he had made her a wedding present, meant that he had given her something in his will.   He was an experienced lawyer and presumably was familiar with the requirements necessary to make a testamentary disposition of his property.   A present beneficial interest having been created, the character of the trust was not changed by the fact that the beneficiary was not entitled to receive possession of the trust property until the death of the donor.   In *Atkinson, Petitioner*, 16 R. I. 413 (1889), one William Atkinson made a deposit for his son Willie in a savings bank and made the following entry on the signature book of the bank, "Willie J. Atkinson, William Atkinson, trustee." The bank opened an account and issued a pass book in this form to the father.   Later the father withdrew the deposit and accumulated interest from the bank and invested the money in his own name.   He also made deposits in the bank in the same manner for three other children.   He made no withdrawals from these accounts, but retained all of the deposit books until he died.   He told each of the four children, that he had made the deposits for them, and that the money would be theirs at his death.   No memorandum of the transactions of any kind was made by the father and the pass books were never delivered to the children.   It was held, affirming the decision in *Ray* v. *Simmons*, that a valid trust was properly created for each of the children; that the son Willie was entitled to the money deposited for him with interest from the time of the original deposit; the trustee, having once made a valid trust, had no power to revoke it.   At page 415, DURFEE, C. J., said: "There are cases which hold otherwise, but it seems to us that the courts which decided them did not sufficiently distinguish between a gift, which requires a delivery of the thing given, actual or symbolical, and the creation of a voluntary trust which requires for its conservation, not a delivery of the subject of the trust to the beneficiary, but a

retention of it by the trustee for the beneficiary's benefit; and, of course, where the donor makes himself the trustee, a retention of it by the donor as trustee for his benefit."

In *Gobeille* v. *Allison et al.*, 30 R. I. 525 (1910), this court affirmed the cases of *Ray* v. *Simmons* and *Petition of Atkinson*. In the Gobeille case a mother made a deposit in a bank in her own name as trustee to the credit of her daughter, and a deposit book was given to the mother in the like form. At the time of making the deposit the mother informed the bank that she wished to retain control of these deposits during her life, as she might change her mind and do something else with the deposits. Later the bank book was delivered to the daughter who subsequently returned it to her mother in whose possession it remained until her death. It was held that a trust was not created at the time of the deposit because the mother did not intend to make an absolute and binding trust at that time, but that the subsequent conduct of the mother in delivering the book to the daughter and informing her of the trust, amounted to a declaration on the part of the mother that she held the fund *in præsenti* in trust for the daughter and that a valid trust was constituted which was irrevocable. This case does not support respondent's contention and in no way weakens the authority of the *Simmons* case. The delivery of the bank book was not the essential thing to constitute the trust, but was evidence which, in connection with the information given to the daughter, established the intention to then make a trust. There was no change made in the *res* which was the right to demand a fixed amount of money from the bank nor was there at the time the trust became effective any deposit made or transfer of legal title. The intention to create a trust is the essential thing; this intention must be expressed and must be clearly established by proof, the nature of which naturally varies in different cases. In the case at bar we find the intention to establish a trust *in præsenti*, the expression of this intention by the written declaration of trust; the subject matter of the trust was

designated and set apart in such a manner that it could be identified, and the beneficiary was informed of the creation of the trust. There was but little if anything more which the donor could have done to make a valid trust. The donor was entitled to retain the stock in his possession, also to retain the deed of trust. It was not necessary to make any delivery to the beneficiary. By the declaration of the trust the beneficiary acquired at once a beneficial interest in the *res* and of necessity the donor at the same time parted. with such beneficial interest. In a certain sense it may be said that there was then a transfer of the beneficial interest from the donor to the beneficiary but such transfer resulted by operation of the declaration of trust and as a result thereof and required no further or other act.

Our conclusion is that the complainant was entitled to the 422 interests at the death of Mr. Davis and so much of the decree appealed from as establishes her right thereto is affirmed, and the appeal of the respondent is dismissed.

By the decree of the Superior Court respondent was required to pay to complainant all dividends and all interest therefrom received after the death of Mr. Davis. The dividends were retained by respondent, a banking corporation, and certificates of deposit were issued therefor, upon which four per cent., the highest rate of interest allowed on any such deposit, was credited by the bank. Complainant claims that she is entitled to receive six per cent., the legal rate of interest, whether that amount was actually earned or not, or, at the least, to four per cent. per annum, compounded semi-annually.

The respondent acted in good faith in depositing the funds in the form of certificates of deposit. The propriety of making such a deposit in any other solvent banking corporation is not questioned. In the circumstances there was nothing improper in the action of respondent in keeping the fund in its own bank. If the deposit had been made in another bank, as the interest was received, naturally and properly, it would have been invested, presumably in the

same form, by certificates of deposit.   Having retained the
fund in its own bank, respondent should have invested the
interest as it fell due and consequently we find that re-
spondent is chargeable and should pay interest at the rate
of four per cent. compounded semi-annually.

Respondent is not entitled to counsel fees to be paid out
of the fund.   This is not a case of interpleader.   On the
contrary respondent claims to hold legal title by right in
itself and adversely to the complainant, and the latter is not
required to pay the counsel fees of her adversary.   The cross
appeal of the complainant is sustained.

Counsel may present to this court an order and form of
decree, for entry in the Superior Court, on July 5th next, at
nine o'clock, a. m. Standard time.

*Eugene A. Kingman, John W. Baker, Edwards & Angell,*
for complainant.

*Tillinghast & Collins,* for respondents.   *William R. Til-
linghast, Harold E. Staples,* of counsel.

