ANTONIO D. LAROCQUE *vs.* EVELYN F. LAROCQUE.

APRIL 26, 1948.

PRESENT: Flynn, C. J., Capotosto and Baker, JJ.

CAPOTOSTO, J. This is a bill in equity brought by a husband against his wife wherein he prays that certain real estate in the city of Pawtucket now owned by them in fee as joint tenants be sold and that the net proceeds from such sale be divided equally between them. The respondent in her answer in the nature of a cross bill denies that the complainant is entitled to any interest in the real estate, averring that the entire consideration for the purchase of the property was paid by her from the proceeds of life insurance received upon the death of her first husband; that, prior to her marriage to the complainant, he had fraudulently induced her to insert his name in the deed as a joint tenant; and she prays that complainant be ordered to convey to her his interest in the property.

The cause was heard in the superior court on bill, answer and proof. It is before us on complainant's appeal from a final decree dismissing the bill and granting affirmative relief to the respondent. The decree orders that the real estate therein described "be cleared from the claims of the complainant and that said real estate be set aside to her in fee simple, free and clear from all right, title and claim of the complainant * * *."

The following facts are undisputed. Complainant and respondent were married February 22, 1941. It was a second marriage for each. The complainant had a boy by his former marriage, and the respondent, formerly Mrs. Evelyn Genest, had a boy and a girl by her first husband, who died October 12, 1940. No child was born of the present marriage. Shortly after the death of Mr. Genest the complainant and respondent began to talk of marriage and in contemplation thereof they visited various properties for the purpose of buying a home for themselves and their children. They finally decided to purchase the property now in question from Joseph Desmarais for $6800.

On December 18, 1940 a deposit in the sum of $200 was paid to Desmarais, who apparently agreed to assist in securing a mortgage for $6000 towards completion of the sale. Such a mortgage, payable at the rate of $50 a month, including interest and taxes, was obtained from the Old Colony Co-operative Bank. The sale was completed at the bank in the presence of both complainant and respondent on January 14, 1941. Desmarais then received $600 from the parties in addition to the proceeds of the mortgage, thus making up the purchase price of $6800. The warranty deed, which was prepared by a title guarantee company, conveyed the property to "Antonio D. Larocque and Evelyn F. Genest" as joint tenants.

At the trial in the superior court the controversy centered around the question as to the ownership of the $800 that was paid for the property in addition to the $6000 from the mortgage. Both parties, and later the trial justice, proceeded on the erroneous assumption that the determination of that question was all-controlling in the circumstances and, therefore, treated the payment of the $800 as if it constituted the entire consideration for the sale. They all overlooked the fact that the mortgage to the bank was an important element of the sale, and that the proceeds of that mortgage constituted a very material part of the money that went to make up the purchase price.

Since the completion of the sale on January 14, 1941, the complainant has been and, so far as appears in the record before us, is now bound to pay, in whole or in part, the $6000 mortgage note that he signed when the property was purchased. The incurring of this obligation constituted a valuable contribution to the consideration for the sale. See *O'Brien* v. *O'Brien*, 73 R. I. 1. Under the decree from which the complainant appeals, he is deprived of all right in the property but continues legally bound to pay the obligation of the mortgage note, whatever the balance due thereon may now be. This in itself is inequitable.

The evidence is highly conflicting as to the ownership

of the $800 paid to Desmarais and also as to why complainant's name was inserted in the deed. Other than clearly showing that both the complainant and the respondent were almost continuously employed at good wages and that the latter, especially after marriage, attended to all financial matters, the evidence on the points just above mentioned is replete with denials, self-contradictions, evasions and exaggerations by both parties.

The complainant in substance claims that he and the respondent agreed to purchase the property now in dispute in contemplation of marriage and with the understanding that the deed to such property was to be in their joint names; that at that time he had savings in the sum of $900, which he kept in a cedar chest in his home; that he gave to the respondent $100 of this sum as his part of the initial payment when the $200 deposit was paid to Desmarais; and that he gave to her the remaining $800 of his savings when the sale was to be completed, part of this sum to be used in paying his one half of the down payment, and the remainder to be expended to purchase additional furniture for their home.

The respondent denies all this testimony, claiming that the $800 paid to Desmarais was life insurance money which she had received upon the death of her first husband. In support of her claim she produced a receipt for $200 in her name from Desmarais and a check for $800 in which she was the payee. The complainant's explanation of these instruments was that, as to the receipt, it was immaterial to whom it ran, as he trusted her because she was to be his wife; and, as to the check, it was respondent's suggestion to complete the down payment in that manner and that the check was merely in substitution of the money he had given her.

Now, as to why complainant's name was inserted in the deed. As already stated, he claimed that the property was bought with the understanding that the deed was to be in their joint names. He also testified that at that time it

was further distinctly understood that each was to pay one half of the monthly payments on the mortgage as long as the respondent continued to work, and that if later she either did not or could not work he would carry the burden of the entire monthly payments.

While the respondent categorically denied that she freely agreed to have complainant's name inserted in the deed, she did not thus deny his alleged agreement as to the monthly payments, but rather relied upon such an undertaking by him, complaining, however, about his noncompliance at times with that promise. Her testimony in direct examination with reference to why complainant's name appeared in the deed was that he fraudulently led her to believe that, being a widow, she could not get a mortgage in the required amount because she did not have enough security; and that, relying on such representation, she consented to have the complainant's name in the deed in order to get the mortgage.

We find a rather different picture in her testimony on cross-examination. Although she continued to refer to complainant's representation as above indicated, she testified repeatedly that she had known the complainant for some time and trusted him; that he had promised she would not have to work; that he would keep up the mortgage payments; and that because of such promises she agreed to put his name in the deed. A few quotations from the part of the testimony under discussion are illustrative. "Q. And you figured there wasn't any risk in putting his name on the property because he came from a reliable background? A. Well, I trusted him. I didn't know just what he was. * * * Q. And at that time (meaning a few days before the sale was completed) you told him because you trusted him and because he was going to carry half the burden on the property you would put his name on the deed? A. He didn't say anything about half. He said he would carry the whole burden." Also: "Q. Well, the *main reason* that you put his name on the property was that you trusted

him? A. That is right, because I trusted him." And again: "Q. He says to you, 'We are going to be married anyway, so you might as well put my name on the property.' Is that what he said? A. Yes. Q. So because you were going to be married to him you were satisfied to put his name on the property, is that correct? A. That is right." (italics ours)

There is also the following evidence that has some bearing, even though it be by inference, upon one of the main questions in this cause, to which evidence the trial justice gave scant consideration. For some undisclosed reasons the parties have been unable to lead a married life without dissension, although it is clear that during peaceful periods of varying duration the complainant gave the respondent his entire weekly earnings to be used by her for payments on the mortgage and for household expenses. Prior to the hearing of the instant cause in the superior court in October 1946 the respondent brought four petitions for divorce, the first about two years after their marriage. Three of these were abandoned upon reconciliation and as far as appears from the record she is still pressing her last petition.

Interlocutory decrees in the third and fourth divorce cases were read into the record at the instance of the complainant. In the first of these decrees, dated December 18, 1944, the complainant was "ordered to pay the mortgage payments on the property at 261 Williston Way, Pawtucket, Rhode Island, to the Old Colony Cooperative Bank"; and in the second decree, dated August 21, 1946, both he and the respondent were "ordered to pay one-half of all instalments of interest, principal and taxes * * * on home * * *." By both decrees the complainant was allowed to live at home, subject to certain specified privileges and restrictions, neither party to interfere with the other's occupancy of their respective portions of the house.

After a careful consideration of the evidence and the trial justice's rescript we are of the opinion that his decision is clearly wrong. In our judgment, even though he did not believe that the complainant kept $900 in a cedar chest and

that such money constituted a part of the down payment on the property, yet he overlooked the fact, as we have already indicated, that complainant's obligation on the mortgage note was an important element in the consideration that the parties gave for the purchase of the property. The incurring of that obligation was as much a part of the purchase price as the down payment.

This is not a case where one party pays the *entire* consideration for the purchase of property, or any definite aliquot part thereof, and title thereto is taken in the name of another for convenience or other proper reason. The fundamental error that we have just above mentioned apparently led the trial justice to apply the law either of a resulting or constructive trust to the facts as found by him because of respondent's claim that, through complainant's fraudulent representation, she was induced to permit his name to be inserted in the deed. Under our decisions that law is clearly inapplicable in the circumstances of this cause.

To establish a resulting trust the evidence must be clear, full and convincing. *Di Libero* v. *Pacitto*, 71 R. I. 361, 366; *Angell* v. *Angell*, 64 R. I. 264, 268. The same rule applies in the case of a constructive trust. *Greene* v. *Rhode Island Hospital Trust Co.*, 60 R. I. 184, 186; *Rosati* v. *Rossi*, 47 R. I. 493, 494; *Industrial Trust Co.* v. *Colt*, 46 R. I. 319, 326. In the instant cause the conflicting evidence, with its inherent infirmities previously suggested, is plainly insufficient to establish either a resulting or a constructive trust. The trial justice therefore erred in denying and dismissing complainant's bill, and further erred in granting to the respondent on her cross bill affirmative relief of the kind and to the extent set forth in the decree.

When all the evidence and the reasonable inferences therefrom are considered as a whole, the fair conclusion in our judgment is that, in contemplation of marriage and when the parties were in complete harmony, the complainant and the respondent merely entered into an agree-

ment to buy and did buy the property in question as a home for themselves, the title to be in their respective names as joint tenants, irrespective of whose money was used to make the down payment for the purchase of the property. The situation thus originally and intentionally created cannot now be changed at will by either party because of altered personal relations due to an apparently unsuccessful marriage, or to a failure to perform the agreement. The complainant is therefore entitled to partition.

The complainant's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a decree in accordance with this opinion.

*Ernest L. Shein,* for complainant.

*William R. Goldberg,* for respondent.