LOUISE K. HUSSEY *vs.* MARY F. HUSSEY.

AUGUST 22, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity praying that a trust be impressed in favor of the complainant on two specifically described parcels of real estate in this state, one in the town of Middletown and the other in the city of Newport, and that the respondent be ordered to convey an undivided one-half interest in said real estate to the complainant. The cause was heard by a justice of the superior court on bill, answer and proof. The trial justice denied and dismissed the bill and a decree to that effect was duly entered. The complainant has appealed to this court from the entry of that decree.

The complainant is the widow of Daniel A. Hussey, who died June 12, 1946, intestate and without issue. She was thereafter duly appointed administratrix of his estate. At the time of his death the title to the properties in question stood in his name and in that of his brother Thomas S. Hussey as tenants in common. Hereinafter, adopting the appellation used by the parties throughout this cause, we shall refer to the brothers as Dan and Tom. Mary F. Hussey, the mother, Tom and two sisters, Mary E. Hussey and Abby M. Hussey, survived Dan. Under general laws 1938, chapter 567, §1, upon Dan's death the title to the one-half undivided interest standing in his name descended to the mother subject to a life estate in the widow. The bill therefore named her as the sole respondent but she died March 28, 1949 while the cause was pending in this court. Upon proper petition and after a hearing an order was entered by us making the daughters, Mary E. and Abby M. Hussey, parties respondent in the cause, as the mother had transferred to them by deed the one-half undivided interest which she had inherited from Dan in the properties in dispute.

The basic issue in the cause is whether in 1937 the complainant, then Louise Kesson, gave Dan, who had been courting her from about 1926 until their marriage on November 20, 1944, certain sums as a loan, or whether she gave him that money to invest for her as the owner of an undivided one-half interest in the two properties described in the bill.

It appears in evidence that in 1937 Dan and Tom were doing business in Newport as partners under the name of Standard Auto Supply Company. Since the owner of the premises where they carried on that business contemplated a sale of the property, they decided to buy certain land in the town of Middletown to protect their business interests in case of any untoward eventuality. Omitting all unnecessary details, it is clear that Dan and Tom agreed to take title to the land in both their names, each to pay

one half of the purchase price of $2500. This transaction was duly carried out in accordance with such agreement. The deed to this land, which is dated July 15, 1937, runs to the two brothers as tenants in common.

Shortly thereafter the brothers decided to buy certain rental property on Broadway in the city of Newport for $13,750, which property was to be purchased and held by them upon the same conditions as the Middletown land. This transaction was also carried out in accordance with their agreement, each contributing his one-half share of the cash payment of $3750 and both executing a mortgage and note for $10,000 to a Newport bank for the balance. The deed to this property is dated August 21, 1937 and, like the one to the Middletown land, conveys the title to the two brothers as tenants in common. All documents pertaining to both properties were kept by the brothers in a safe deposit box standing in their joint names.

Dan and Tom further agreed to use all rents from the Broadway property for the payment of the mortgage and maintenance expenses. To this end on September 13, 1937 they opened a joint account in a local bank which was thereafter used solely for such purposes. The mortgage was paid in full by money from this account before Dan died. Following his death Tom, on July 25, 1946, closed the joint account and transferred the balance thereof to an account in his name alone. This occurrence was the beginning of discussions between the complainant and Tom which ultimately resulted in her claiming for the first time that she was the real owner of a one-half undivided interest in both the Middletown and Newport properties. The bill in the instant cause was filed August 8, 1947.

The complainant was not without experience in business matters. For many years she was employed in a bank, first as bookkeeper, then as stenographer and finally as teller. The evidence strongly tends to establish that unknown to Tom she gave Dan divers sums of money to buy

the properties involved in this cause. Her claim in substance now is as follows. She testified that Dan, who did not have the necessary money to pay his share of the purchase price for the Middletown property, suggested that she invest in real estate instead of allowing her money to remain on deposit in a bank; that, acting on that suggestion, she gave him one half of that purchase price with the secret understanding between herself and Dan that she remain undisclosed as the real purchaser of a one-half interest in that land to avoid embarrassment to all concerned by having her then name of Louise Kesson appear as a grantee with that of Tom; and upon the further understanding that later the matter would be straightened out between herself and Dan. A similar claim was made by her with reference to the Broadway property, she testifying that the money for one half the cash payment there involved was given by her to Dan with the same understanding as just above indicated.

Dan also was a person with business experience. He apparently took over the management of the Broadway property and the control of the joint account hereinbefore mentioned in connection therewith. In this he was assisted by the complainant who usually collected the rents, consulted with him respecting repairs and made bank deposits, but all payments concerning that property were made by check signed by Dan and drawn on the joint account.

It is to be noted that the complainant admitted that at no time did she ever ask or even suggest to Dan before and especially after marriage that he do anything, whether by will, unrecorded deed, or memorandum of any kind, showing that the one-half interest in the two properties standing in his name really belonged to her. On this point it is significant to observe that as between them financial interests were not entirely disregarded, as the evidence shows that following their marriage she put her own money in a joint account with him, and he transferred government bonds to her. Her only explanation of why

she did not tell "a soul" that she had or claimed any interest in the property until long after Dan's death was because of confidence in each other.

Before referring to certain evidence in contradiction of her present claim we call attention to the fact that by G. L. 1938, chap. 567, §4, as amended by P. L. 1944, chap. 1421, the widow of an intestate who dies without issue is entitled to a life estate in his real property. It appears in evidence that after Dan died the complainant in 1948 executed a lease of the Broadway property to a Mr. Parkhurst. In cross-examination the following appears: "CQ. You didn't claim any rights in that property except a life tenant, did you, at the time of that lease? A. I did not at that time."

The testimony of Tom and Mary Hussey on the fundamental issue in this cause was in direct conflict with complainant's present claim. Tom testified that, following a consultation with her attorney who was advising her as administratrix of Dan's estate, he went to the bank in company with the complainant to add her name to the joint account of the Broadway property which he had previously transferred to his name alone, and that there she then told him as a further reason why that account should be in their joint names that she had "loaned him [Dan] the money for that property." Mary Hussey testified that on one occasion when the complainant came to her home to discuss certain matters in connection with the management of the Broadway property she overheard complainant say to Tom: "Well, you know I loaned Dan money * * *."

As appears from his rescript the trial justice denied and dismissed the bill on the ground that the complainant had "failed to sustain the burden of proof so far as the law requires her to prove her claim." The complainant contends that the trial justice overlooked and misconceived the evidence, arguing among other things that since he makes no specific reference in the rescript to the testi-

mony of either Tom or Mary Hussey he necessarily must have considered their testimony unworthy of belief. She therefore asks us to give no weight to the decision of the trial justice and to examine the evidence for ourselves.

While the rescript may be discursive in certain particulars, yet when read as a whole it is clear to us that the trial justice did not overlook or misconceive the material evidence on the controlling issue. Although he did not mention Tom or Mary Hussey by name, it is implicit from his language that he based his decision on the conflicting evidence in the cause, which in his judgment did not meet the degree of proof required to establish a resulting trust. True the witnesses just mentioned were interested parties, as the complainant argues, but that same observation is applicable to the complainant, especially when one considers her conduct of secrecy with reference to her present claim until long after the death of the only other person who could throw direct light upon the matter. There is nothing inherently improbable in the testimony of Tom or Mary Hussey, nor is there anything in the record before us to impeach its credibility. We are therefore unable to say that the trial justice was clearly wrong in deciding against the complainant.

To establish a resulting trust the evidence must be clear and convincing. *Larocque* v. *Larocque,* 74 R. I. 72; *Robininson* v. *Robinson,* 66 R. I. 321; *Oldham* v. *Oldham,* 58 R. I. 268. Even if we were to give no weight to the rescript of the trial justice, our own independent examination of the evidence satisfies us that the complainant failed to establish her claim of a resulting trust by clear and convincing evidence. But in order that the parties may hereinafter be free to proceed as they may be advised we have purposely refrained from referring in any specific manner to the evidence relating to the sum or sums of money which the complainant claims to have given Dan in the matter of both the Middletown and Newport properties.

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Burdick, Corcoran & Peckham, Edward J. Corcoran,* for complainant.

*John C. Burke, J. Russell Haire,* for respondent.