272 A.2d 683.

NORMA E. DESNOYERS *et al. vs.* METROPOLITAN LIFE
INSURANCE CO. *et al.*

JANUARY 18, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This action was brought by Norma E. Desnoyers, individually, as administratrix of the estate of her late husband, Paul L. Desnoyers, and as mother and next friend of Kimberly Anne Desnoyers and Scott Joseph Desnoyers, the minor children of Norma E. and her deceased husband. The case involves the proceeds of a policy of life insurance purchased by the deceased from the defendant Metropolitan Life Insurance Company, wherein defendant, Joseph A. Desnoyers, father of the deceased, is the named beneficiary. The case began as a jury trial but, before the close of the testimony, an incident occurred which resulted in the trial justice taking the case from the jury and, with consent of counsel, proceeding without the jury. The cause is before us on the appeal of defendant, Joseph A. Desnoyers, from a judgment entered in the Superior Court, based on the decision of the trial justice, declaring that the defendant held the proceeds of the policy as trustee by express trust for the benefit of the children.

The following are the pertinent facts. The plaintiff, Norma E. Desnoyers, was married to Paul Desnoyers on May 13, 1963. She was then about 16 years of age and he was 18. Two children, Kimberly Anne and Scott Joseph, were born of this marriage. In September 1962, prior to the marriage, Paul purchased an insurance policy on his life from defendant insurance company and named his father as primary beneficiary and his mother, Edith M. Desnoyers, as contingent beneficiary. On or about July 17, 1966, Paul went to Metropolitan's office for the purpose of surrendering this policy for its cash value. He

discussed the matter with the agency manager, and instead of surrendering the policy, Paul obtained a loan on it and paid the premiums to date.

In July 1966, the parties separated and, on the twenty-sixth of that month, Norma filed a petition for divorce. On August 19, 1966, a day before the divorce petition was to be heard, Paul was killed in a motorcycle accident.

On the date of her husband's death, Norma called the Metropolitan's office and asked the agency manager whether her husband had changed the beneficiary on the policy in question. As a result of this call, the agency manager and another agent went to her home, examined the policy and determined that the beneficiary had not been changed. They obtained the policy from her and gave her a receipt for it. At this time there was some discussion between Norma and the agents about taking care of the children. The agents then went to the home of defendant Joseph A. Desnoyers, the named beneficiary, had him sign a proof of loss, and, subsequently, Metropolitan paid him the proceeds of the policy which amounted to $13,400.

Paul also had a policy of life insurance at his place of employment. His wife was the beneficiary of this policy and she received the proceeds thereof, in the amount of $10,500.

The determination of the issues requires a rather detailed examination of the testimony concerning the pertinent factual background which occasioned this action. Norma's testimony is in substance as follows. She first met Paul in October or November 1961 and started to go steady with him in April 1962. In the summer of 1962 they told his parents they were going to marry in June 1963. She was present when he purchased the policy in question in 1962. He told her in a conversation on August 21, 1962, that it was to become a family plan policy to cover his wife and children. He further told her that the

only reason the father was named beneficiary was because they were not married and it was to be changed automatically when they were married. The policy was initially kept at his father's home, and when they were married it was brought to the home of Norma and Paul.

Their marriage was not completely harmonious. They separated on at least two occasions and it was during the second separation in July of 1966 that Norma brought a petition for divorce against Paul. Norma was scheduled to go to the Family Court regarding her divorce on the day after the fatal accident. On August 18, the day before he died, she talked with him on the telephone and he asked to come home, saying: "I will pay my policy and I will pay all your medical expenses, and I will leave the policy the way it is, in your name."

The plaintiffs called Robert H. MacDougall, Jr., an employee of Metropolitan, as an adverse witness under G. L. 1956 (1969 Reenactment) §9-17-14. The substance of his testimony follows. In June or July of 1966, he had gone to Paul's home for the purpose of collecting premiums on the policy in question. During his visit he had a conversation with Paul, at which time Norma and the children were present. Paul told him he could not afford the policy and did not want to keep it; he wanted to terminate the policy, since payments of the premium were in arrears.

Mr. MacDougall also testified that Paul was startled when he learned that his father was the beneficiary of the policy. Paul said he wanted to make his wife the beneficiary and Mr. MacDougall told him that he would have to go to the company's office in Pawtucket and obtain a loan and make the change in beneficiary.

The plaintiffs also called Paul's father, the defendant, Joseph A. Desnoyers, as an adverse witness under the statute. He testified that his son Paul went to work at the

age of 16 at the father's place of employment and he worked there a couple of years. The policy involved in this case was taken out right after Paul started to work, and Joseph's wife, Edith, paid the premiums until Paul got married. Paul's payment of board included the insurance premiums. The defendant also testified that he had no understanding with Paul about his being the beneficiary of the policy. After his son died, Mr. MacDougall, a representative of Metropolitan, came to see him and inquired about a trust fund for the children. He denied making any statement to Mr. MacDougall that he was going to set up a trust fund for the children. He told Mr. MacDougall he would take care of the children "in my own way."

Paul's mother, Mrs. Edith M. Desnoyers, was also called by the plaintiffs as an adverse witness under the statute. She testified that she was present in September 1962 when the insurance agent came to the house to talk to her son about the policy in question and that Norma was also present. Her son had been working for about one year and five months when he took out the policy, and he said he would take out a policy as his brother and sister did, to protect himself. Mrs. Desnoyers also testified that her son Paul told her he was not going to change the beneficiary because of the way his wife was acting. She did not remember saying that she and her husband were going to set up a trust fund for the children. She denied talking to Norma about a trust fund and did not remember discussing with Norma the matter of the proceeds of the policy.

Mr. Charles A. Dobbins, district manager of Metropolitan's office in Pawtucket, was called as a witness by the defendant insurance company. He testified that he saw Paul in the Pawtucket office on or about July 17, 1966, and that Paul wanted to cash in the policy. Mr. Dobbins

suggested to Paul that he take out a loan and reinstate the policy by bringing the premiums up to date. Nothing was said about changing the beneficiary. Even though the company had a form for changing the beneficiary, no change of beneficiary came through his office from September 1963 to August 1966. Any changes originating through the home office would be attached to the policy, and there was no record of a change of beneficiary in this case. Further, Mr. Dobbins testified that Metropolitan has a rule that it can and has issued policies with "intended spouse" as the designated beneficiary.

Mr. Dobbins was asked in direct examination if, when he obtained the policy from Norma, she had mentioned anything about what Joseph would do with the proceeds. His reply was, "Apparently there has been some discussion that it would be — he was going to take care of the grandchildren." When Mr. Dobbins and his assistant manager left Norma's house, they went to the house of Paul's father. They explained the provisions of the policy under which a trust could be set up where the proceeds are left in trust with the company for the benefit of the children. Mr. Desnoyers rejected the suggestions of Mr. Dobbins and said that he would "take care of it in his own way."

The last witness to testify was Mr. Bruce J. Dubois, who was called as a witness by defendant Joseph A. Desnoyers. As we have previously stated, toward the close of his testimony, after the trial was adjourned for the day, an incident took place which caused the trial justice to consider taking the case from the jury. The trial justice then gave counsel an opportunity to decide whether they were willing to proceed before the court on the question of whether a constructive trust arose on the facts of this case. Both counsel waived jury hearing in connection with the issue of a constructive trust and then rested without presenting any further testimony. Counsel for Metro-

politan indicated to the court that he was not involved in this question and interposed no objection.

· After listening to argument of counsel for plaintiffs and for defendant, Joseph A. Desnoyers, the trial justice took the case under advisement and, subsequently, filed a written decision ordering that judgment be entered in accordance therewith. The only appeal before us is that of defendant Joseph A. Desnoyers; the Metropolitan Life Insurance Company took no appeal and filed no briefs in this proceeding.

In his decision the trial justice reviewed and discussed the testimony of the various witnesses and the exhibits in evidence. He said at one point that the

> "* * * issue as to the defendant Joseph Desnoyers is whether he has received the proceeds of the insurance policy under an express trust or under such conditions as to create a constructive trust for the benefit of the insured's wife and children or for the benefit of the children alone."

In commenting on the testimony he said that the testimony of defendant, Joseph A. Desnoyers, was essentially reliable; that his wife's testimony that her son told her he was not going to change the beneficiary after the way his wife was acting was credible, but her failure to remember whether she said that her husband and she were going to set up a trust fund for the children left substantial doubt about her credibility on that point. Further, he said that Norma's testimony, particularly on the issues of her husband's intentions regarding the insurance policy as to his children, was credible. He also commented that Mr. MacDougall's testimony was essentially credible and that Mr. Dobbins was a reliable witness.

The trial justice noted that the naming of his father as the beneficiary of the policy established in him only a contingent right to receive the policy proceeds in the event of Paul's death. He found that as time went on and Paul

married and fathered two children, the situation changed; and while the defendant, Joseph, remained the stated beneficiary, the credible evidence indicated that Paul intended the proceeds of the policy to be directed and used for the benefit of his wife and children. However, he also stated that there was credible evidence from the testimony of Paul's mother that Paul's failure to change the beneficiary to his wife was deliberate and intentional because of their marital difficulties.

He further found that notwithstanding the continuing designation of defendant, Joseph, as the beneficiary of the policy, the credible evidence established that in the period of time shortly preceding his death, Paul's intention was not to make a gift of the proceeds of the policy to his father, but rather, to make such proceeds available for the benefit of his children by a trust through his father; and that the father's acquiescence in this by his statement that he would provide for the children in his own way is an indication that he understood that his designation as beneficiary was not to be considered as a gift to him but entailed obligations towards the children. He said:

> "We see him cast in the role of a trustee by intention of the deceased and by acquiescence of the father, even though he had not full knowledge of the incidents of a legal trust."

After stating that the rights of the children might be considered on two grounds, namely, that either a constructive trust or an express trust had been proved, he concluded that the conduct of the parties amounted to the establishment of an express trust. He found specifically that defendant, Joseph, was the trustee, by express trust, of the proceeds of the policy for the benefit of the children. These findings are incorporated in the judgment which was entered in the Superior Court.

We have indulged in a rather lengthy discussion of the factual background and of the trial justice's decision because we considered this necessary for an understanding of the issues raised in this case. We now address ourselves to those issues seriatim.

## I
### The Question of the Express Trust

We first consider the trial justice's finding that this was an express trust. He based this on his previous finding that defendant, Joseph A. Desnoyers, was " * * * cast in the role of a trustee by intention of the deceased and by acquiescence of the father * * *." For the reasons which follow, we hold that the trial justice erred in so finding.

A trust is an obligation arising out of a confidence reposed in a person, for the benefit of another, to apply property faithfully and according to such confidence. *Gurnett* v. *Mutual Life Insurance Co. of New York*, 356 Ill. 612, 191 N. E. 250. As the court said at 219-220 in *Peoples Savings Bank* v. *Webb*, 21 R. I. 218, 42 A. 874:

> "If he has completed a trust or gift, a court must execute it; if it is inchoate, there is nothing for a court to carry out. The underlying question, both in trusts and gifts, is the intention and act of the donor. * * * There must be a present intent to make a trust or gift at the time; there must be an execution of the intent by some act, such as delivery of the evidence of title, or a notice and acceptance of the trust, and the intent and act must be such as to give a present right or benefit to the donee. When any of these elements are wanting, the gift or trust is incomplete."

See also *Knagenhjelm* v. *Rhode Island Hospital Trust Co.*, 43 R. I. 559, 569, 114 A. 5, 9, where the court said:

> "The intention to create a trust is the essential thing; this intention must be expressed and must be clearly established by proof * * *."

A person who alleges a voluntary express trust in per-

sonalty, title to which is held by another, must prove such trust by clear and convincing evidence. *Nusbaum* v. *Glickman*, 57 R. I. 506, 190 A. 692. Based on this evidentiary standard, there is no evidence in this case to support the trial justice's finding that defendant, Joseph A. Desnoyers, was "* * * cast in the role of a trustee by intention of the deceased * * *." There is no evidence of a declaration of intent by the decedent to make his father trustee of the proceeds of the policy. The mere naming of his father as the beneficiary is not sufficient to amount to a declaration of such intent. The weakness in plaintiffs' position is also illustrated by the fact that even though decedent was "startled" to find out that defendant was still beneficiary, he did not attempt to change the status of the policy beneficiary when he visited the insurance company office in Pawtucket, shortly before his death, and took a loan on the policy in question.

Even if it be assumed, without deciding, that there is evidence of an oral declaration of intent by Paul to create a trust, it would not help plaintiffs here. Our statute of frauds,[1] §9-1-4 (1969 Reenactment), provides that no action shall be brought:

> "*Third*. Whereby to charge any trustee upon any express trust * * *.
>
> "* * * *
>
> "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum

---

[1] Plaintiffs, in reliance on *Conti* v. *Fisher*, 48 R. I. 33, 134 A. 849, claim that since the question of the statute of frauds was not raised in the Superior Court proceedings, the statute cannot be interposed here for the first time. The case at bar is distinguishable from the situation in *Conti* v. *Fisher, supra*. In the present case the trial justice expressly stated that he, with approval of counsel, would continue to hear the case on the question of a constructive trust. Such being the case, the statute of frauds was not relevant. But in view of his finding of an express trust, the statute becomes relevant and, therefore, the question of its applicability is properly before us.

thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

Under our statute an express trust of personalty must be evidenced in writing. *Cetenich* v. *Fuvich*, 41 R. I. 107, 102 A. 817, and, as the court said in *Lawrence* v. *Andrews*, 84 R. I. 133, 140, 122 A.2d 132, 136:

> " * * * our statute unlike those of many of our sister states bars oral proof of an express trust of personalty as well as a trust of realty. It does not refer only to trusts of land or any interest therein * * * but to 'any express trust' without qualification."

In the case at bar, the sole written evidence was the insurance policy making the defendant, Joseph A. Desnoyers, primary beneficiary. Without additional writings, the policy alone cannot stand as evidence of an express trust. Thus, there is no such "writing" as would satisfy a statute of frauds.

## II

### The Question of the Resulting Trust

The plaintiffs also argue that if an express trust does not exist, a resulting trust should be found based on the intent of the parties. According to V Scott, *Trusts* (3d ed.) §411 at 3227: "If an owner of property transfers it inter vivos upon a trust which fails either at the outset or subsequently * * * the trustee cannot retain it but will be compelled in equity to restore it to the settlor."

Resulting trusts may be founded entirely on oral evidence whether the subject-matter of the trust is real or personal property, since the statute of frauds is not applicable to resulting trusts. See *Cetenich* v. *Fuvich, supra, Arcand* v. *Haley*, 95 R. I. 357, 187 A.2d 142; *Broadway Building Co.* v. *Salafia*, 47 R. I. 263, 132 A. 527.

However, even though oral evidence is admissible to establish a resulting trust, the burden of proof is upon

the claimant to produce evidence which is clear, full, and convincing. *Reynolds* v. *Blaisdell,* 23 R. I. 16, 49 A. 42; *Angell* v. *Angell,* 64 R. I. 264, 11 A.2d 922; *Larocque* v. *Larocque,* 74 R. I. 72, 58 A.2d 633; *Hussey* v. *Hussey,* 76 R. I. 185, 68 A.2d 48.

In order for a resulting trust to obtain under these facts, the decedent must be found to have created an express trust, which failed in whole or in part. V Scott, *Trusts* (3d ed.) §404.1 at 3214. As we have stated before, the evidence as presented is insufficient to establish that in naming the defendant, Joseph A. Desnoyers, as beneficiary under the policy, the decedent created an express trust. *Compare Cutroneo* v. *Cutroneo,* 81 R. I. 55, 59, 98 A.2d 921, 923, where we said:

> "There must be clear, full and convincing evidence that *at the time of the conveyance* it was the intention and understanding that the contributor was to have the beneficial ownership in the whole or in a definite fractional part."

Indeed the evidence shows the decedent completely failed to instruct the defendant, Joseph A. Desnoyers, about the existence of any trust prior to his death.

### III

### The Question of the Constructive Trust

The plaintiffs argue that even if we should find that there is no valid express or resulting trust, the evidence does support a finding of the existence of a constructive trust. They ask, therefore, that we sustain the judgment on the basis of a constructive trust. See *Del Greco* v. *Del Greco,* 87 R. I. 435, 142 A.2d 714. The defendant Joseph A. Desnoyers, on the contrary, argues that there is insufficient evidence in the record to establish a constructive trust. We agree with defendant Joseph A. Desnoyers' position and hold that plaintiffs have failed to present sufficient evidence to establish a constructive trust.

A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. V Scott, *Trusts* (3d ed.) §462 at 3413.

As the court said in *Lawrence v. Andrews, supra* at 139, 122 A.2d at 135-36:

> "A constructive trust arises by operation of law. It is based on fraud or deceit practiced upon the grantor by the grantee, not necessarily actual fraud but constructive fraud. * * * In 1 Scott on Trusts, §44.1, p. 251, the principle is stated thus: 'If it can be shown that the transferee procured the conveyance by a consciously false representation of fact, a constructive trust will be raised in favor of the transferor. Thus if it is proved that when the transferee promised to reconvey the property he did not intend to fulfill his promise, there is more than a mere promise subsequently broken, there is actual misrepresentation as to the fact of his present intention. If this is proved, a constructive trust will be raised in favor of the transferor.' "

Constructive trusts arise by operation of law and not by agreement or intention. *State Lumber Co. v. Cuddigan,* 51 R. I. 69, 71, 150 A. 760, 761. In order to give rise to a constructive trust, actual or constructive fraud must be established and the evidence must be clear and convincing. *Sterns v. Industrial National Bank,* 96 R. I. 313, 191 A.2d 152. In support of their contention that the evidence in the case at bar gave rise to a constructive trust plaintiffs cite the following language of the court in *Rosati v. Rossi,* 47 R. I. 493, 494, 134 A. 18, 19:

> "In *Industrial Trust Co. v. Colt,* 46 R. I. 319, [128 A. 200,] this court gave its approval of the doctrine that an oral agreement to receive and hold property in trust for the benefit of another places an obligation upon the conscience of the person so receiving it, and if in fraud he seeks to take the property as his own,

equity will interfere and raise a constructive trust in favor of the intended beneficiary to prevent the successful perpetration of the fraud. Such constructive trust has its origin solely in the application of equitable principles, and is distinct from the oral express trust which the parties, by their agreement, sought to create, but which is unenforceable by reason of the statute of frauds. A constructive trust arising in equity is not affected by the statute of frauds nor the statute of wills. In taking property in such circumstances a grantee, devisee or donee has placed an obligation upon his conscience. If in disregard of that conscientious obligation such grantee, devisee or donee converts the property to his own use he does it in fraud, and it is upon such fraud and not upon his original agreement that equity bases the constructive trust."

But that language is of no help to plaintiffs; it speaks of a situation where there is an oral agreement to receive and hold property in trust for another. In the case at bar, there is no evidence that a promise was made by the defendant, Joseph A. Desnoyers, to his son Paul to hold the proceeds in trust for Paul's wife and children, or for his children alone. Nor can such a promise be inferred from defendant Joseph A. Desnoyers' statement to the Metropolitan agent that he would take care of the children in his own way. The plaintiffs have not presented sufficient evidence to establish a constructive trust by clear and convincing evidence. They have not shown by clear and convincing evidence that defendant, Joseph A. Desnoyers, has committed a fraud in any way, either actual or constructive.

Since our determination with respect to the nonexistence of any form of trust is dispositive of this appeal, we do not consider it necessary to consider the defendant Joseph A. Desnoyers' other contentions.

114

The defendant Joseph A. Desnoyers' appeal is sustained, the judgment appealed from is reversed, and the cause is remanded to the Superior Court with direction to enter judgment in accordance with this opinion.

*Joseph E. Marran, Jr.,* for plaintiffs.

*James Cardono, Moses Kando,* for defendant, Joseph A. Desnoyers.