229 A.2d 775.

ABRAHAM BELILOVE *et ux. vs.* LILLIAN REICH *et al.*

MAY 26, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This action was commenced by a bill of complaint filed prior to January 10, 1966, the effective date of the new rules of civil procedure of the superior court. Inasmuch as all other pleadings were filed and the case heard and concluded after that date, we apply the terminology and procedure prescribed in the new rules.

The sellers, hereinafter referred to as plaintiffs, brought this complaint[1] against the alleged purchasers, hereinafter

---

[1]In this state a vendor, under contract of sale of realty, may have specific performance in equity against a purchaser. *Pollock* v. *Di Orio,* 142 A. 535.

referred to as defendants, to compel the specific performance by defendants of an alleged agreement evidenced by a written memorandum[2] signed by the parties wherein defendants offered to purchase, and plaintiffs agreed to sell, a certain parcel of real estate on Methyl street, in the city of Providence, for $18,000.

The defendants filed an answer consisting of six separate defenses. The first alleges that the complaint fails to state a claim against defendants upon which relief can be granted. The remaining defenses are in substance a statement of the grounds upon which the first defense is based. See rules of civil procedure of the superior court, rule 12(b).

After hearing the cause the trial justice rendered a decision from the bench and ordered the entry of a judgment based thereon granting the prayers of the complaint and ordering defendants to specifically perform the agreement

---

[2]"Melvin G. Rosen—Realtor
735 Hope Street
Providence, Rhode Island
Date Nov. 1, 1965
"Received of Lillian Reich and Sarah Reich of
140 Babcock St Prov. R.I.
The Sum of Five Hundred Dollars ($500.00) check
for deposit to purchase the property at 39-41 Methyl St. Prov. R I
for the sum of Eighteen thousand Dollars (18,00.00) [sic] Dollars
This deposit is accepted, subject to the approval of the owner
Melvin G. Rosen — Realtor
By Saul Spitz
"(I) We hereby agree to purchase the above described property at the price and in accordance with the terms as herein stated.
*Lillian Reich*          *Sarah Reich*
Buyer          Buyer
"(I) We, the undersigned seller(s) hereby agrees to sell above mentioned property, at price and terms above stipulated; deposit to be held in escrow by agency, a commission of $500.00 is to be paid by seller(s) to Melvin G. Rosen — Realtor.
*Abraham Belilove*          *Sylvia Belilove*
Seller          Seller
Nov. 2, 1965"

set forth in the complaint. He ordered defendants to accept delivery of a warranty deed to the subject real estate, and to pay to plaintiffs the price stipulated in the agreement. On May 25, 1966, the clerk of the superior court entered the judgment in accordance with the provisions of the rules of civil procedure of the superior court, rules 58(a) and 79(a). The cause is before us on defendants' appeal from the entry of such judgment, filed pursuant to the provisions of the rules of civil procedure of the superior court, rule 73.

The parties have briefed and argued their appeal under four main points. We shall treat the opposing contentions in like manner, but before doing so we shall discuss briefly the pertinent facts.

On November 1, 1965, defendants signed the memorandum in question offering to purchase the premises described therein for the sum of $18,000 and on the same day delivered a check in the sum of $500 to the office of Melvin G. Rosen, a real estate agency. The transaction was handled by Saul Spitz, an employee of the Rosen agency, but the check was made payable to Mr. Rosen. On November 2, 1965, plaintiffs in writing accepted the written offer by affixing their signatures thereto. The memorandum also contained a promise by plaintiffs to pay a commission of $500 to Mr. Rosen.

There is no serious dispute about the accuracy of the foregoing facts. The dispute relates to certain talks between the real estate agent and the parties in the period of time between the making of the offer by defendants and the acceptance by plaintiffs. At the hearing in the superior court, defendants attempted to prove that on November 2, 1965, prior to the acceptance of their offer by plaintiffs, Mr. Spitz called defendants and told them that plaintiffs wanted $500 more for the property, so that they could install certain storm windows on the property in order to

meet a commitment made by them to the tenants; that defendants refused to agree to this; that it was not until the night of November 2, 1965 that Mr. Spitz called and informed them that plaintiffs had agreed to sell at $18,000; and that defendants immediately stated they did not want the property and refused to sign any other papers. The defendants argue in substance that Mr. Spitz's talk constituted a counteroffer and therefore a rejection of defendants' original offer.

Mr. Spitz admitted talking to one of the defendants about aluminum windows, but he denied making any counteroffer. It will serve no useful purpose to discuss in great detail the testimony presented by plaintiffs on this question, other than to say that such testimony is all to the effect that no counteroffer was in fact made by them or their agents at any time and that defendants' offer to purchase was in existence when plaintiffs accepted it on November 2, 1965.

After reviewing and analyzing all the pertinent testimony on the question of whether there had been a counteroffer by plaintiffs or their agents, the trial justice found as a fact that there was no counteroffer made and that defendants had not withdrawn their offer to purchase. He based such findings in part upon his conclusion that plaintiffs' testimony on this point was clear, but defendants' was far from lucid. He therefore concluded that plaintiffs' acceptance on November 2, 1965, of defendants' offer constituted a valid contract.

Under their first point, defendants argue that the trial justice's finding that there was no counteroffer is clearly wrong, and that he misconceived the law with respect to the finding that defendants had not withdrawn their offer. In our opinion there is no merit in either contention.

We do not disturb the findings of a trial justice sitting in equity unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *Curran &*

*Burton, Inc.* v. *Inter-City Fuel Oil, Inc.,* 90 R. I. 73, 76, 154 A.2d 774, 775; *Carpenter* v. *Dos Santos,* 96 R. I. 334, 337, 191 A.2d 282, 283. The finding that no counteroffer was made is supported by competent evidence; the trial justice expressly relied on plaintiffs' testimony on this issue, and, indeed, even stated that defendants' version of what happened on the morning of November 2, 1965 did not "* * * tend to make it look like a counter offer * * *." In the circumstances we cannot say that his findings on this issue were clearly wrong or that he misconceived or overlooked any material evidence pertaining thereto.

It was not error for the trial justice to hold that defendants did not withdraw their offer. This follows from the finding that no counteroffer was made. We need not therefore consider defendants' contention that the trial justice misconceived the law relative to who had the burden of proof on the question of the alleged withdrawal. To summarize, the trial justice found that defendants had made an offer to buy; that plaintiffs had accepted such offer; that no counteroffer was made; and that defendants never withdrew their original offer. These findings, being supported by competent evidence, must, on this record, stand.

We consider next defendants' contention that the agreement was too indefinite to warrant specific performance and that the trial justice therefore abused his discretion. The trial justice considered this issue and concluded that the memorandum complied with the statute of frauds. In this he was correct. As the court said in *Durepo* v. *May,* 73 R. I. 71, 76, 54 A.2d 15, 18: "A memorandum to comply with the statute of frauds need contain only the substance of the contract or agreement and not a statement of all particulars." See also *Ives* v. *Hazard,* 4 R. I. 14, 26, and *Sholovitz* v. *Noorigian,* 42 R. I. 282, 285, 107 Atl. 94, 95.

With respect to defendants' contention that the agreement lacked the certainty, the detail and the definiteness

required for specific performance, we need only refer to *Ives* v. *Hazard, supra,* which, in our opinion, is controlling here. In that case the court ordered the respondent to specifically perform the following agreement which he had signed:

"*Mem.* 28th of May, 1852.

"I agree to sell R. H. Ives the Peckham farm, now owned and occupied by me, say about 45 acres, in Newport, for fifteen thousand dollars, (15,000,) payable the 25th of March, when possession is to be given. He, R. H. I., paying the annuity for December, 1852."

The agreement in the case at bar includes substantially all the elements present in *Ives* v. *Hazard, supra.* It is true, as defendants point out, that the agreement contains no statement as to the type of deed to be delivered, the terms of payment, and no mention of the usual adjustments relative to rents, taxes, water bills, etc. But these details are not elements essential to the validity of the agreement or decisive on the question of specific performance. As the court said in *Durepo* v. *May, supra,* at 76, A.2d at 19:

"If, in the instant cause, the sale were for cash and no time for performance was fixed in the option, there can be no doubt that the parties would be held to have intended that the title should be passed in the ordinary way, that is, that the delivery of the deed and the payment of the purchase price were to be concurrent acts."

And where the parties fail to stipulate as to other matters, not essential to the validity of the contract, it is reasonable to assume that "* * * they intended to follow the ordinary practice in the sale of real property under similar circumstances * * *," *Durepo, supra,* at 77, A.2d at 19, in accordance with accepted standards. It is our opinion that the agreement was sufficiently definite and certain for enforcement by specific performance.

We come now to defendants' contention that in the circumstances of this case the trial justice abused his discretion in granting specific performance. A bill for specific

performance raises no question of right but is a prayer for relief addressed to the judicial or sound discretion of the court. *Holland* v. *Lavigne,* 88 R. I. 376, 381, 148 A.2d 522, 525; *Ball* v. *Milliken,* 31 R. I. 36, 46, 76 Atl. 789, 793. As the court said in *Graves* v. *Goldthwait,* 153 Mass. 268, 270, 26 N.E. 860, 861, cited with approval in the *Ball* case:

> "Even if the plaintiff were entitled to a specific performance of the defendant's agreement, such right is not an absolute one, but rests in the discretion of the court to be exercised on equitable considerations in view of all the circumstances of the case."

The trial justice was well versed with the applicable law. He carefully considered whether there was any reason in conscience why specific performance should not be ordered in the circumstances. He stated in his decision that one may have a "* * * perfectly good legal contract * * *," but the circumstances may be such that "* * * the law will not carry it through to specific performance." In passing on this issue he found nothing unfair, to defendants. He expressly stated that he found no hardship in holding defendants to their bargain. There is no merit in defendants' argument, that there was an abuse of discretion because plaintiffs made no effort to sell the property to anyone else; they were under no duty to do so. On this record we cannot say that the trial justice abused his discretion.

Under their next point defendants contend that the trial justice was clearly wrong in finding that the parties had reached an agreement. They argue that the parties by their actions were relying upon the execution of a purchase-and-sale agreement to bind their understanding and therefore the termination of negotiations before the same was executed foreclosed the consummation of any understanding. This contention is also without merit.

The trial justice very carefully considered this issue and discussed it in his decision. He found as a fact that it was the intention of both parties to have this memorandum con-

stitute a formal contract. While it appears that there was some testimony by one of the plaintiffs about a more formal buy-and-sell agreement, the trial justice found that no communication had been made to defendants, prior to plaintiffs' acceptance of their offer to buy, concerning the execution of a more formal contract thereafter. In our opinion his findings on this issue are supported by competent evidence from which it was reasonable to infer, as he did, that the parties intended the memorandum in question to be a formal and binding contract. See *Ives* v. *Hazard, supra,* at 27.

The judgment is affirmed.

*Samuel J. Kolodney,* for plaintiffs.

*Abraham Goldstein,* for defendants.