259 A.2d 405.

ANNE E. MACON, *Adm'x of the Estate of* MARY PRATT *vs.*
JOHN A. CIALLELLA *et ux.*

DECEMBER 1, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a civil action to establish entitlement
to funds withdrawn by the defendant from an account at
The Old Stone Bank in Providence which carried the desig-
nation "Mary Gilday or John A. Ciallella And Payable To
Either Or To The Survivor."

Mary Gilday, known as Mary Pratt upon her remar-
riage after the death of her second husband, died
in 1964. Anne E. Macon, Mary's daughter, and the

administratrix of her estate, is the plaintiff and John Ciallella, Mary's oldest child, is the defendant. The case was heard by a justice of the Superior Court sitting without a jury, and judgment was entered awarding the plaintiff "* * * the sum of Twelve Thousand One Hundred Thirty-Six Dollars and Sixty-Eight Cents ($12,136.68), being the full amount of the monies on deposit in bank account number L 20591 in the Providence Institution for Savings (Old Stone Bank) as of March 28, 1961." The defendant has appealed.

The litigation is of a familiar type. A family is disputing the ownership of a bank account created in the name of the parent-donor and one of her children and payable to the parent or the child or the survivor. Usually this kind of litigation will involve an account which is intact upon the death of the original depositor. One contestant will be the surviving payee claiming under the form of the account; the other will be the personal representative of the deceased donor-payee who will claim that the form of the deposit does not evidence the true intention of the donor. Here, the factual setting differs somewhat from the norm since, in this case, the donee withdrew the funds on deposit in the bank and closed the account prior to the death of the donor-payee.

The minor factual divergence between this and the more familiar type of litigation in no way affects the settled law in this kind of case. To succeed in establishing an absolute inter vivos gift of a bank account, the claimant must prove by satisfactory evidence that the gift was fully executed and that the donor intended it to take effect presently and immediately. *Carr* v. *MacDonald*, 70 R. I. 65, 37 A.2d 158.

Turning to the facts of this case and omitting any reference to the incidental details, it appears that Mary Pratt died in 1964 at the age of 76. She had been married three times. Her first husband was named Ciallella, and he was

the father of her four children. About 15 years after his death she married William Gilday. She and her new husband maintained a savings account in The Old Stone Bank payable to either of them or to the survivor. When Gilday died in 1961 the balance on deposit was slightly in excess of $12,000. On March 28, a few days after his death, the widow and her son John went to the bank and transferred the balance in the Gilday account to a new account which was made payable either to her or to John or to the survivor. It is this account which is the subject of the present litigation.

John's version is that his mother gave him the account absolutely and unconditionally, and that the funds on deposit were his to use as he wished. In substantiation he testified that the visit to the bank, the closing out of the Gilday account, and the opening of the new account were his mother's ideas, not his, and that she proposed them without prompting from him; that, after the account had been opened and as they were leaving the bank, she handed him the deposit book saying "This is yours and don't be foolish with it"; that a few days later she told him to "* * * get all my bills together and pay them off and get them off my back or get them away from me while I got [sic] some money"; that the deposit book only left his possession twice—once when he asked his mother to make a withdrawal for him and again when she deposited $200 for him; that he declared the interest earned on the account as income on his federal income tax returns in 1963 and 1964; that he made 14 withdrawals from the account for his own use and purposes without having first either asked for or obtained his mother's consent or approval. He asks us to infer that his mother's preference for him over his brother and sisters, was evidenced not only by the gift of the bank account, but also by a will which she executed in 1954 in which she left the bulk of her estate to her husband for

life with remainder to him, and provided only nominal gifts of one dollar each to her other children.

John's version of the facts and circumstances is not the only one. The plaintiff takes a different view. What she had to say was essentially substantiated by her brother Angelo and her sister as well as by other witnesses. She suggested that her mother did not give John exclusive possession and control of the bankbook, but merely entrusted it to him for safekeeping and for a limited period of time; and that she did not place John's name on the bankbook upon her own initiative as he had testified, but at his request and upon his assurance that upon her death he would share the balance in the account equally with his brother and sisters. Anne also quoted her mother as having told her that John had borrowed $1,500 from her on one occasion and $1,000 on another, and that he had not repaid those loans as agreed. Finally, in an obvious attempt to reflect unfavorably on John's credibility and reliability, she established that he had closed out the account in the interval between November 3, 1964, when their mother was admitted to the hospital and November 9, 1964, when she died.

We have outlined the essential evidence; the trial justice did more. He reviewed all of the material evidence in detail, and, after analyzing and evaluating what the key witnesses said, he gave credence to Anne and her corroborating witnesses and rejected John's testimony as incredible and unbelievable. Then, applying the settled law of this State to the evidence accepted as the more credible, he concluded that John had not established by clear and satisfactory evidence an *in praesenti* gift of the bank account.

The defendant challenges these findings on the ground that the trial justice overlooked or misconceived material evidence. While defendant asserts this, his argument really is that his version of what happened was more credible

than his sister's, and that the trial justice should have believed him, rather than his sister. Thus, for example, he refers to the testimony of Anne and her witnesses to the effect that they knew about the transfer of the Gilday account and that Mrs. Pratt had told them about having loaned him money, and he argues in his brief that the trial justice should not have accepted such testimony as credible because "* * * not one of these conversations took place in defendant's presence; and each of the sisters admitted that during their mother's lifetime they never mentioned the bank account to the defendant."

Arguments of that kind—and they typify defendant's assertions—go to the weight of the evidence, rather than to its probative force. While they were properly addressable to the trial justice to whom the parties submitted the facts in controversy, they have no place before us since we accept his resolution of conflicts in the testimony unless clearly wrong or based upon a misconception or oversight of material evidence. *Star Dinette & Appliance Co.* v. *Savran,* 104 R. I. 665, 666, 248 A.2d 69, 70; *Belilove* v. *Reich,* 102 R. I. 250, 254-55, 229 A.2d 775, 778; *Feole* v. *Pagano,* 100 R. I. 311, 312, 214 A.2d 898, 899. In this case, defendant has neither established clear error, nor has he shown what material evidence on a controlling issue the trial justice either overlooked or misconceived.

The defendant also claims that the trial justice erred when he ruled that a gift could not be established without a showing that Mary Pratt intended to "divest herself of *all* her life savings at the age of seventy-three or seventy-four" (emphasis supplied). Settled law, he argues, imposed a lesser burden, and required only that he establish that his mother intended, *in praesenti,* to divest herself of the *exclusive* ownership and control over the subject matter of the gift and to vest that ownership and control *jointly* in herself and him.

It is, of course, true that the language which defendant relies upon, or some version of it, has frequently been stated as the settled law of this State.[1] It is apposite, however, only in those cases where the claim is that the owner of the account has created a *joint interest* in the deposit for himself and another; where what was intended was a gift of a *part*, rather than of the *whole* of the account. It has no relevance where a claimant asserts that the donor intended to divest himself of *all* interest in the account and to gift *all* of the money on deposit absolutely and unconditionally. *Carr* v. *MacDonald, supra.*

Here, the theory upon which John tried his case and his own testimony is that his mother gave up *all* of her interest in the account, and that she made an outright, absolute and irrevocable gift to him, not of a *part* or of an *undivided interest* in the money on deposit, but of the *entire* account. Success on that theory required a showing that the mother intended to part with the *entire* account, and in commenting upon the unlikelihood that a woman of her advanced years would intend to divest herself of *all* of her life savings. the trial justice was merely refuting John's theory of the case. This was not error.

The defendant's appeal is denied, the judgment appealed from is sustained and the case is remitted to the Superior Court for further proceedings.

*James P. McElroy, Jr., Earl F. Pasbach,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh, Bruce G. Tucker,* for defendants.

---

[1]*Wyatt* v. *Moran,* 81 R. I. 399. 403, 103 A.2d 801, 803; *Tabor* v. *Tabor,* 73 R. I. 491, 493. 57 A.2d 735, 736; *People's Savings Bank* v. *Rynn,* 57 R. I. 411. 423, 190 A. 440, 446; *Raferty* v. *Reilly.* 41 R. I. 47, 50, 102 A. 711, 712; *Weber* v. *Harkins,* 65 R. I. 53, 59, 13 A.2d 380, 382.