253 A.2d 601.

HENRY E. TEFFT, *Executor of the Estate of Loella Tefft vs.* CAROLYN J. TEFFT, *a/k/a Carolyn Lavarini.*

MAY 8, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.  These are cross appeals from a superior court judgment, entered in a civil action which was commenced by the plaintiff executor for the purpose of determining ownership of a bank deposit.

The plaintiff's complaint alleges, in substance, that the bank account in question was opened in the West Warwick branch of the Industrial National Bank, hereinafter called "Industrial"; that a passbook was issued bearing account No. 35557 in the names of "Carolyn J. or Loella Tefft"; that this passbook was found among the effects of said Loella Tefft by her executor, plaintiff here; that all monies deposited in said account belonged to and were deposited by plaintiff's decedent; and that all withdrawals therefrom

were made by or on behalf of said decedent. Paragraph 6, however, expressly alleges:

"That at no time did the deceased, Loella Tefft ever, through act or admission, indicated that she was giving the funds in said account to the defendant, nor did she at any time permit the defendant to deposit or withdraw money from said account, nor did she deliver said bank book to the defendant."

The defendant answering, denied all material allegations including that of said paragraph 6 of the complaint. She also pleaded that the complaint failed to state a claim upon which relief could be granted.

Further, defendant in her answer, as authorized by rule 13(c) of the superior court rules of civil procedure, made a counterclaim not only for the proceeds of the Industrial savings account No. 35557, which account is the basis of plaintiff's action, but also claimed a bank account in the Hope Valley branch of the Washington Trust Company, being account numbered 7602, and standing solely in the name of Loella Tefft, plaintiff's decedent. In connection therewith, she alleged in substance that the funds represented by the Washington Trust account No. 7602 were deposited in the name of Loella Tefft pursuant to an understanding between defendant and said Loella Tefft that the latter would hold the same in trust for defendant; and that as to the savings account represented by Industrial passbook No. 35557, Loella Tefft, plaintiff's decedent, had repeatedly stated that the account was jointly owned by her and defendant to whom the money was available at any time. The plaintiff answering denied every material allegation.

On this state of the pleadings, the conflicting claims were tried to a superior court justice sitting without a jury. From the pleadings and the evidence adduced by plaintiff, it is established that Loella Tefft was the grandmother of defendant Carolyn Lavarini, nee Tefft and that from some

time in 1948 until a year and a half after her marriage in November 1959, Carolyn lived in her grandmother's house. The evidence further establishes that on December 26, 1957, when defendant was 17 years old, she accompanied her grandmother to the West Warwick branch of Industrial where account No. 35557 was opened and a passbook was issued in the names of "Carolyn J. or Loella Tefft." The original deposit was $1,025 and on March 6, 1958, the sum of $4,000 was added.

A witness for plaintiff testified that she had purchased property from the decedent, Loella Tefft, and in connection therewith had given Loella two checks. The first such, dated November 22, 1957, was for $1,100 and the second, dated February 20, 1958, was for $4,040. The first such check, bearing Loella's endorsement, was cashed December 26, 1957, at the West Warwick branch of Industrial. Thus, both date and bank correspond with the opening of account No. 35557, although the amount of the deposit was $75 less than the amount of the check.

The second check was also cashed at the West Warwick branch of Industrial and on the same day, March 6, 1958, $4,000 were deposited to account No. 35557. This check also bears only Loella's endorsement and, as previously noted, was in the amount of $4,040. The plaintiff attempted to prove through a bank officer that the $1,025 with which account No. 35557 was opened and the $4,000 deposit were proceeds from the checks cashed and deposited by Loella, his decedent. In this he was unsuccessful, the bank official not having the records which would establish the identity of the depositor. Carolyn in her testimony offered nothing by way of contradiction of the obvious inference.

It was established, however, that from the opening of the account on December 26, 1957, until Loella's death in late 1965, there were a total of seven withdrawals. Of these, Carolyn made but one, namely that of April 24, 1961, when

$200 was withdrawn. Questioned about this withdrawal, defendant Carolyn admitted that the money was withdrawn at the direction of and turned over to her grandmother for the payment of taxes by the latter.

Further, plaintiff testified that before his appointment as executor of the will of Loella Tefft, who was his mother, he discovered passbook No. 35557 in a drawer of decedent's desk at her home. This was in the course of going through papers or bills or other matters normally to be looked for in connection with an estate. A Mrs. Sherman, sister of Loella Tefft, gave testimony, admittedly vague, tending to show that the passbook for account No. 35557 was always in the possession and control of decedent.

After plaintiff had completed his evidence, defendant made a motion to dismiss as permitted by rule 41(b)(2) of the superior court rules of civil procedure, which motion the trial justice denied.

The defendant thereupon went forward with her defense to plaintiff's claim, as well as the case on her counterclaim. With respect to the former, defendant testified that at the time account No. 35557 was opened, her grandmother told her that the money was hers to be used any time she needed it; that this was a continuing understanding; that she, defendant, always believed the money to be hers as well as her grandmothers; and that she always had *access* to the passbook. (emphasis ours)

In corroboration of this testimony, defendant produced Doris Peck, also a sister of Loella Tefft, who testified that her sister had told her that account No. 35557 was always available to defendant. However, she also testified that her sister had repeatedly stated that if anything happened to her, defendant would be well taken care of.

With regard to her counterclaim, defendant testified that on July 11, 1958, she opened a savings account in her own name with the Hope Valley branch of the Washington

Trust Company. The initial deposit was $21. She explained that she opened this account because her grandmother told her that if she saved weekly she would not be required to pay board. It appears that defendant had become gainfully employed after graduating from high school in 1958. She continued to make deposits in this account until June 12, 1959, when she closed it out. On the same day, using proceeds from the closed account, defendant opened a joint account in the names of herself and her grandmother. This latter account was also opened in the Hope Valley branch of the Washington Trust Company.

In explanation of the change in the account from defendant as sole owner to a joint account with herself and her grandmother, defendant testified that she did this because her grandmother was sharing account No. 35557 with her and that she wanted to share the Washington Trust account with her grandmother. When it was called to her attention on cross-examination that the original Washington Trust account, opened July 11, 1958, in defendant's name alone, was opened months after the grandmother had opened account No. 35557 in Industrial, and defendant was asked why she had not opened the original account with the Washington Trust Company in the name of her grandmother as well as herself, defendant replied, "Because it was savings of my own."

In any event, defendant further testified, and the Washington Trust Company passbooks in evidence substantiate, that this joint account opened July 12, 1959, was closed out September 2, 1960. On the same day, it is defendant's testimony, the proceeds of the joint account with Washington Trust Company were used to open Washington Trust Company savings account No. 7602 in the name of Loella Tefft alone. The passbook evidencing this new account was received in evidence and corroborates defendant's testimony.

In her testimony defendant explained that at the time in question, she was contemplating a legal separation from her husband and made the transfer from a joint account to one standing in the name of her grandmother alone on the advice of counsel. Her testimony makes it clear that she did not believe that this transfer was anything other than a device to keep her money out of her husband's reach.

After both parties had rested, the trial justice rendered a decision for plaintiff in the action commenced by him and for defendant on her counterclaim with regard to the savings account standing in the name of Loella Tefft. Accordingly, a judgment was entered giving effect to these decisions and each party claimed an appeal from so much of the judgment as was adverse. For the reason that a resolution thereof turns on the relatively simple question of whether the trial justice's decision thereon was clearly wrong, we first consider plaintiff's appeal from the judgment for defendant on her claim to Washington Trust Company account No. 7602.

It is a fundamental principle, long recognized in this jurisdiction,[1] that a trust results by operation of law for the benefit of one who transfers his property to the name of another with the intention of retaining the beneficial interest. Correctly invoking this rule as being that which governed the instant defendant's claim to the proceeds of the savings account with the Washington Trust Company, the trial justice addressed his attention to the evidence bearing on such claim. He expressly stated that defendant's testimony fully satisfied him that the funds on deposit in the account in question were defendant's property and that she placed them in the name of her grandmother

---

[1]*Hudson* v. *While*, 17 R. I. 519, 23 A. 57; *Reynolds* v. *Blaisdell*, 23 R. I. 16, 49 A. 42; *People's Savings Bank* v. *Staples*, 46 R. I. 356, 128 A. 196; *Cirillo* v. *Cirillo*, 77 R. I. 223, 74 A.2d 440, and *Arcand* v. *Haley*, 95 R. I. 357, 187 A.2d 142.

to put them out of the reach of her husband, intending at all times to retain the beneficial interest. Moreover, his comments make clear that he appreciated and took into consideration the probative force of the several Washington Trust Company passbooks which are part of the record and corroborative of defendant's testimony. It is basic that a trial justice's findings of fact will not be disturbed by this court unless it can be shown that in making his findings, the trial justice either misconceived or overlooked material evidence on a controlling issue. *Chace* v. *Anarumo*, 104 R. I. 48, 241 A.2d 628.

The plaintiff freely acknowledges such to be the rule, but in his oral argument and brief, contends in effect, that the trial justice both misconceived and overlooked material evidence. We are not so persuaded. What plaintiff really argues is, that the evidence is as open to findings of fact adverse to defendant as it is to the findings that the trial justice made in her favor. This may well be, but even so, plaintiff takes nothing thereby. If the findings made by the trial justice are supported by competent evidence and/or reasonable inferences to which such evidence is susceptible, we will not substitute our view for that of the trial justice, and this even though a contrary conclusion could have been reached. *Arden Engineering Co.* v. *E. Turgeon Constr. Co.*, 97 R. I. 342, 197 A.2d 743. The plaintiff's appeal is without merit.

The defendant's appeal is more complex. In support thereof she makes two assignments of error, each of which requires consideration and merits discussion. First, she contends that the trial justice erred in denying her motion to dismiss. This is so, she argues, because plaintiff's complaint, specifically paragraph 6 thereof, alleges that his decedent at no time made a gift of savings account No. 35557 to defendant. Having alleged this, defendant contends, plaintiff had the affirmative burden of proving that

there had been no gift in praesenti and he offered no evidence to support such allegation. In this she relies on *Flynn* v. *Byrne*, 82 R. I. 48, 105 A.2d 800.

There, one F opened several savings accounts with money that was indisputably hers. Later, while hospitalized, she caused B's name to be added to the accounts, setting them up in joint form. Following F's death her administrator brought a bill in equity seeking to impress a trust on the proceeds of the several accounts. In his bill, said administrator alleged that his intestate had made no gifts in praesenti to respondent, an allegation respondent specifically denied.

At the hearing on the suit, the administrator adduced evidence establishing that all deposits were made by his intestate and that respondent's name was not originally on the accounts. He offered no evidence, however, in support of his allegation that his intestate had not made a gift of the accounts in praesenti. The trial justice granted respondent's motion to dismiss, which motion was based on the proposition that on no view of the facts and law was complainant entitled to relief. The complainant appealed and this court affirmed.

So doing, we pointed out that, although rebuttable, the fact that a bank account is joint in form and payable to the survivor, constitutes prima facie evidence that the account is the property of the survivor upon the death of the other joint tenant. Thus, the administrator's allegation in his bill that his intestate had never made a gift in praesenti was, as this court stated, "the very essence of the controversy."

The complainant having closed his case without offering any evidence which, however, viewed, would support his allegation that there had been no gift in praesenti, an allegation that respondent had expressly denied, this court sustained the trial justice's granting of respondent's motion

to dismiss, pointing out that the burden of proof is on him who sued.

In the instant appeal, defendant argues that when plaintiff closed his case, there was nothing more before the trial justice than there was before the trial justice in *Flynn* v. *Byrne, supra*. She contends that the pleadings and facts of the instant case are on all fours with the pleadings and facts in *Flynn,* hence, she argues, it was error for the trial justice to deny the motion to dismiss in the case at bar.

Before disposing of this contention, we should point out that although the doctrine relative to joint accounts enunciated in *Flynn* controls the fundamental issue presented in this case, there are significant differences in the posture and pleadings of the two. *Flynn* was commenced by a bill in equity to impress a trust upon funds, the legal title to which was ostensibly vested in respondent. The case at bar was commenced by a bill of complaint for a declaratory judgment[2] to determine that legal title never rested in defendant and remained the property of the estate of plaintiff's decedent. Furthermore, *Flynn* was eradicated as to procedure when the general assembly by enacting P. L. 1965, chap. 55, sec. 28, repealed then G. L. 1956, §9-14-22, on which latter section *Flynn* rested. See *Rowell* v. *Kaplan,* 103 R. I. 60, 235 A.2d 91 (Footnote 5).

Under the practice authorized by said §9-14-22, prior to its repeal, respondent in an equity proceeding or proceeding following the course of equity, could move to dismiss at the close of complainant's evidence without waiving his right to present evidence if the motion was denied. In passing on such a motion, the trial justice was required to give to complainant's evidence the same consideration to

---

[2]Although §9-30-4 is nowhere pleaded as the basis for the complaint, it is clear that the trial justice and the parties treated the action, as one commenced under the Uniform Declaratory Judgments Act. See §9-30-1 et seq.

which it would be entitled were the trial justice passing on a motion for a directed verdict in an action at law. If, when the evidence was so considered, complainant could not prevail on any view of the facts and the law, the trial justice would grant respondent's motion and a decree would enter accordingly. When the decree entered was dispositive of complainant's cause on its merits, such decree would be final and subject to review in this court. If not so dispositive, the decree entered would not be final. It would rather have the effect of a nonsuit in a law action.

Thus, in *Flynn* v. *Byrne, supra,* the decree appealed from foreclosed the merits of complainant's cause and was properly reviewable by this court. But, in *Flynn,* the trial justice granted respondent's motion, whereas in the instant case defendant's motion was denied.

However, with the repeal of §9-14-22, as aforesaid, the right of a defendant to move for dismissal at the close of plaintiff's evidence in a non-jury trial looks for validity to rule 41(b)(2) of the superior court rules of civil procedure which became effective January 10, 1966.[3] The instant action was commenced subsequent to that date and the case tried pursuant to the rules then in effect. Therefore, when the trial justice declined to grant defendant's motion and she went forward with evidence of her own, the trial justice's ruling was not a final order, reviewable in this court as a judgment entered pursuant to rule 58(a) of the superior court rules of civil procedure.

---

[3]Rule 41 (b) (2) in pertinent part provides:
"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff the court shall make findings as provided in Rule 52 (a)."

Had the trial justice granted defendant's motion to dismiss, or had she rested when her motion was denied, the decision of the court would have been that which is contemplated by rule 50(a) of the superior court rules; namely decision on a motion for a directed verdict which calls for entry of judgment under rule 58(a). This was not what happened, however, and the ruling of the trial justice on defendant's motion to dismiss is, in the circumstances, not reviewable here.

Even so, defendant next contends that the decision of the trial justice resulting in judgment for plaintiff as to the ownership of Industrial account No. 35557 constitutes reversible error in that it is contrary to the law and to the evidence. This contention, as she develops it, consists of two arguments. They are first, that in reaching his decision the trial justice misconceived the applicable law and second, that if this is not so, he completely ignored material evidence on a controlling issue. In our opinion, neither argument has merit but we will consider and discuss them in the order presented.

The defendant's argument that the trial justice misconceived the law is predicated on certain comments made by him in reaching his decision. Referring to his rescript, we quote,

> "Of course, our Supreme Court has stated you must look with suspicion upon evidence that tends to deprive a decedent's estate of money that might be rightfully the decedent's and that especially oral statements alleged to have been made by the decedent; the decedent is not here present to contradict the same, so the Court has to look with suspicion on that type of evidence."

Again relying on *Flynn* v. *Byrne, supra,* defendant, stressing the similarity of the facts in that case to those in the case at bar, invokes the rule succinctly enunciated therein at 82 R. I. 53, 105 A.2d 803, as follows, "Under our law

governing such accounts the form of the account is prima facie evidence of the ownership thereof by the survivor upon the death of the other joint owner.", citing *Raferty* v. *Reilly*, 41 R. I. 47, 102 A. 711, *Marston* v. *Industrial Trust Co.*, R. I., 107 A. 88.

Clearly, defendant insists, it is apparent from a reading of the language quoted from the trial justice's rescript that he placed the burden of proving ownership on defendant; whereas under the rule stated in *Flynn*, and cases therein cited, the burden was on plaintiff to overcome the prima facie case made out for defendant by virtue of the form of the savings account, the ownership of which was the question in dispute.[4]

In light of all the evidence considered and referred to by the trial justice and the inferences he drew therefrom in reaching his decision, we think that defendant's position is more plausible than sound. It seems to us that rather than misplacing the burden, the trial justice in using the language on which defendant relies, was simply rejecting defendant's testimony and that of Mrs. Peck relative to Loella Tefft's alleged statement that Industrial account No. 35557 was defendant's property to use at any time. With this construction of the trial justice's quoted language, we reject defendant's argument that the trial justice misconceived the applicable law because, in our judgment, his decision studiously read in its entirety, persuades us that all other evidence in the case, and the reasonable inferences to which it was open, convinced the trial justice that plaintiff had successfully rebutted defendant's prima facie case. *People's Savings Bank* v. *Rynn*, 57 R. I. 411, 190 A. 440.

---

[4]Placing the burden on plaintiff presupposes that Industrial account No. 35557 was in fact a joint account within the contemplation of *Flynn* v. *Byrne* and the other cited cases. In those cases the accounts in dispute were payable to "either or the survivor." Such is not the situation here, but for the purposes of this case, we assume without deciding that the instant account is joint in form.

It is defendant's testimony and that of Mrs. Peck regarding statements made by Loella Tefft relative to defendant's ownership of Industrial account No. 35557 to which defendant had reference in her argument, that if he did not misconceive the law, the trial justice, nevertheless, overlooked material evidence on a controlling issue. Defective in this regard, defendant's argument continues, his findings should not be given the weight they would customarily be accorded and, consequently, this court should reverse the trial justice after independently weighing the evidence.

As heretofore indicated, we are not persuaded that the trial justice overlooked the testimony which, if accepted, is of controlling import. Rather, we think it clear from his decision that he moved this testimony out of the case as being not worthy of belief and did so on evidence and inferences which would motivate us to reach the same result.

To begin with, Mrs. Peck's testimony is self-contradicting. While she did say that her sister, Loella Tefft, told her that Industrial account No. 35557 was defendant's to use at any time she needed it, Mrs. Peck also testified that her sister had repeatedly told her that defendant would be well taken care of, if anything happened to her. This latter testimony, suggestive of an intended testamentary disposition, may be viewed as having completely destroyed Mrs. Peck's testimony that decedent had made a gift inter vivos.

The defendant's own testimony is self-serving and, we think the trial justice believed, inconsistent with established facts and other testimony given by defendant. The defendant opened a savings account of her own in the Washington Trust Company some six months after the opening of Industrial account No. 35557 which latter account was unquestionably opened with money Mrs. Tefft had received from the sale of her property. Some 15 months

later, defendant closed out her account in Washington Trust Company and opened a joint account in the name of herself and Loella Tefft, her grandmother. Her explanation of this transfer from a sole account to a joint account was that since her grandmother had shared her money with defendant in opening Industrial account No. 35557, defendant wanted to share her money with her grandmother. Asked why she hadn't done this when she opened the account in her own name, defendant replied, "Because it was savings of my own."

This is a reply of no small moment. It raises in our mind and, we are persuaded, in the mind of the trial justice, the question why, if defendant believed that the money in Industrial account No. 35557 was hers as well as her grandmother's, she didn't simply deposit her savings in Industrial account No. 35557, either when she first opened the sole account in Washington Trust Company, or later when she transferred her Washington Trust Company funds to the joint account which she opened in that institution. The inference is compelling that defendant had not been led to believe, nor did she believe that she shared Industrial account No. 35557 with her grandmother.

Thus, with the only testimony tending to establish defendant's ownership in the Industrial account out of the case, the trial justice weighed all the other evidence supporting plaintiff's claim against defendant's prima facie case and found that plaintiff had successfully rebutted said prima facie case.

Considering the evidence tending to support the plaintiff's case, which evidence we have gone to some length to delineate, it is not surprising that the trial justice reached the conclusion that he did and whether sustained on the principle that it was not clearly wrong or by reason of our independent determination, we conclude the defendant's appeal is without merit.

Both appeals are denied and dismissed and the judgment appealed from affirmed.

*John J. O'Neil,* for plaintiff.

*Charles A. Nardone, Santo J. Turano,* for defendant.