373 A.2d 822.

ROBERT P. SARNI *et ux. vs.* ORLANDO M. ARMADA *et ux.*

JUNE 3, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. The plaintiffs, Dr. Robert P. Sarni and wife, brought this complaint against the defendants, Dr. Orlando M. Armada and wife, seeking specific performance of a written agreement executed by the parties on March 31, 1967, for the purchase by the plaintiffs and the sale by the defendants of certain premises owned by the latter and located on Reservoir Avenue in the city of Cranston.[1] The defendants' answer contained two defenses. The first averred that the complaint failed to state a claim upon which relief could be granted and the second constituted a general denial. The cause was heard before a justice of the Superior Court without a jury. After the hearing, the trial justice rendered a decision from the bench wherein he made certain findings of fact on the basis of which he denied the plaintiffs' request for specific performance. Thereafter a judgment was entered denying and dismissing the complaint. From that judgment the plaintiffs have appealed to this court.[2] For convenience we shall hereinafter at times refer to Dr. Sarni and his wife as plaintiff and to Dr. Armada and his wife as defendant.

---

[1] Although the complaint also prayed for money damages, the plaintiffs, at the outset of the trial, expressly waived any claim for damages and agreed that the only question before the court was whether specific performance should be granted.

[2] On February 18, 1976, we entered an order denying the defendants' motion to affirm the judgment below pursuant to Rule 16(g) of our rules and the appeal was thereafter heard before us on the merits.

The record discloses the following pertinent facts. In 1965, a group of doctors at Roger Williams Hospital, with which plaintiff and defendant were associated, began discussing the possibility of constructing a medical office building on the grounds of the hospital. The defendant, whose office is located in the premises involved in this action, intended to move into the new building as soon as it was ready. The plaintiff, whose office is across the street from defendant's approached the latter and requested an option to buy his Reservoir Avenue property. Since the proposed medical office building was still in the early planning stage, defendant was not then interested in selling his Reservoir Avenue building, but he promised plaintiff that he would give him the first chance to buy the building. Some time later plaintiff contacted defendant and suggested that they reduce their agreement to writing. On Christmas Eve of 1965, a purchase and sales agreement, dated December 24, 1965, was signed by the parties. It provided that the closing be held on February 1, 1967, and that a $500 consideration be paid to defendant. The plaintiff paid this amount to defendant but at the time of the execution of the agreement defendant expressed concern about what would happen if the proposed new building was not erected. The plaintiff orally assured him that he would not press him in such circumstances and said he would add to the agreement in writing that in case defendant did not move to the new building the agreement would be void. Accordingly, plaintiff added the following provision to the agreement:

"If the party of the first part cannot relocate then this agreement is null and void."

Two years passed but no progress was made toward erecting the medical building. The plaintiff again contacted defendant and the latter again assured him that he could buy the property when he moved to the new

building. According to defendant's testimony plaintiff said he wanted "another legal document the same as the first one." The plaintiff mailed a new agreement, which was prepared by plaintiff's attorney, to defendant. This agreement, which is dated March 31, 1967, was signed by defendant and his wife and returned to plaintiff. It provided for a closing date of February 1, 1969. No additional consideration passed with the execution of the March 31, 1967 agrement. Unlike the first agreement there was no notation in the second agreement stating that it would be null and void if defendant were unable to relocate.

On January 23, 1969, about 2 years after the execution of the second agreement, plaintiff called defendant to inquire whether the latter was going to move out of the Reservoir Avenue building inasmuch as the February 1, 1969 closing date was approaching. The defendant responded that the proposed building had not gone up yet and that they were still in the process of making the necessary arrangements for the construction of such building. According to plaintiff's version of that telephone conversation, defendant said that he was not prepared to deliver the property as provided in the agreement; that he had no intention to do so; and if plaintiff wished him to return the deposit, he would do so.

Following that conversation, defendant mailed a letter, dated January 23, 1969, to plaintiff stating that he had discussed the situation with the hospital and other individuals involved; that he felt that as things then stood he would be unable to sign anything definite regarding a time for closing; and that in view of the project being in its infancy, he would defer signing anything at that time. He then concluded by saying that if plaintiff wished him to return the deposit, he would do so, and that as soon as something was more certain, plaintiff would hear from him.

The plaintiff, in turn, caused a letter, dated January 28, 1969, to be mailed to defendant stating that he and his wife were ready, willing and able to perform the agreement. The pertinent provisions of the March 31, 1967 agreement read as follows:

> "Said premises are to be conveyed on or before February 1, 1969 by a good and sufficient warranty deed of the party of the first part, conveying a good and clear title to the same, free from all incumbrances and for such deed and conveyance the party of the second part is to pay the sum of Twenty-five Thousand Dollars ($25,000.00) dollars of which Fve Hundred Dollars ($500.00) dollars have been paid this day, Twenty-four Thousand Five Hundred ($24,-500.00) dollars are to be paid in cash upon the delivery of said deed.
>
> \* \* \*
>
> "The deed is to be delivered and the consideration paid, if the purchaser so requires, at the Registry of Deeds in which the deed should by law be recorded on February 1, 1969 at 10:00 A.M. unless some other place and time should be mutually agreed upon."

The plaintiff appeared at the Registry of Deeds in Cranston on February 1, 1969 at 10 a.m. prepared to tender a personal check in the amount of $24,500 to defendant for the balance of the payment due under the agreement. He waited about 15 minutes, defendant did not appear, and plaintiff left. The plaintiff stated at the trial that the check he had with him was a personal check, that it was not certified, and that he did not have $24,500 in cash with him at the Registry of Deeds.

It is clear from plaintiff's testimony that he based his claim for specific performance on the express terms of the March 31, 1967 agreement and especially on the fact that there was no provision in that agreement providing for any extension. The defendant, when confronted by plaintiff's attorney with the March 31, 1967 agreement and the

absence therein of a savings provision or condition subsequent, admitted that he and his wife signed the agreement in question. However, he testified that they signed without reading it because plaintiff told him he was going to mail him "the same type of agreement that he had drawn before" and he believed in plaintiff's word.

After both sides rested, the trial justice rendered a bench decision in which he made numerous findings of fact. We shall discuss only those findings which are pertinent to a determination of this appeal. He found that some time prior to December 24, 1965 plaintiff learned that there was a possibility that defendant would move his office to a new location on the grounds of the Roger Williams Hospital in a building to be erected in the future; that plaintiff contacted defendant and the latter orally agreed to give plaintiff the first opportunity to buy the property in question if defendant should change his location; that plaintiff was not satisfied with the oral agreement and in order to protect himself insisted upon a written contract; and that as a result of plaintiff's request a written contract was drawn.

The trial justice further found that when the parties were about to sign defendant brought to plaintiff's attention the fact that the agreement was based upon the condition that defendant would move to the new location on the hospital grounds; that a condition subsequent to that effect was accordingly written into the agreement; that plaintiff understood at that time that the condition subsequent referred to defendant's moving his location to the Roger Williams Hospital grounds; and that subsequently the time of carrying out the agreement expired and a new agreement, which is the subject matter of this proceeding, was drawn and executed.

Continuing, the trial justice found that plaintiff knew at that time that the proposed building was not started;

that defendant made known to plaintiff that the agreement should be the same as the prior agreement; that the second agreement did not contain the condition that the agreement was subject to defendant's locating elsewhere; that there is no evidence that defendant intended to locate at any site other than at the Roger Williams Hospital grounds; and that there was no evidence that the proposed building had ever been started.

With respect to plaintiff's appearance at the Registry of Deeds, the trial justice found that there was no additional deposit of $500 for the second agreement and that plaintiff did not appear with $24,500 in cash as provided in the agreement.

The trial justice stated that he had serious doubts as to the enforceability of the agreement between the parties, but, he continued, assuming plaintiff had an enforceable agreement the question remained whether he should exercise his discretion and grant specific performance. He noted that plaintiff had not changed his position on the basis of the second agreement and that plaintiff was not seeking specific performance in order to engage in the practice of medicine in the building in question, but rather that plaintiff was seeking such relief so he might extend his realty holdings. Additionally he found that to grant specific performance would require defendant to vacate the premises, to give up his location where he had carried on his practice for 14 or 15 years, and to locate elsewhere. The trial justice further found that, assuming that plaintiff had an enforceable agreement, he had not convinced him by clear and convincing evidence that he was entitled to specific performance. On the basis of such findings he concluded that he would exercise his discretion and refuse to grant specific performance because it would cause too great a hardship on defendant who depended upon that

location to realize his income to support himself and his family.

As previously stated, plaintiff expressly waived any claim for damages. See note 1, *supra*. Thus the only issue before us is the correctness of the denial of the prayer for specific performance. In support of his claim of error plaintiff raises two issues.

The first relates to the question of the validity of the second agreement. He argues, in substance, that the unilateral mistake of defendant in failing to read that agreement and in failing to notice the absence of a condition terminating the agreement if he was unable to relocate did not render the agreement void. In brief, plaintiff contends that the second agreement is valid notwithstanding defendant's failure to read the same before signing. In the posture of this case we fail to see the relevancy of this argument or the necessity of any further discussion relating thereto. In his decision the trial justice assumed, without deciding, that the agreement was valid, and, for the purposes of this proceeding, we do likewise.

The plaintiff's second argument is that the trial justice did not find that there was any fraud or misrepresentation involved in the signing of the second agreement and that therefore defendant was bound by that which he signed. We agree that there was no finding of fraud or misrepresentation and that defendant was bound by the agreement he signed. However, the real and basic question is to determine the intent of the parties with respect to when that agreement was to take effect. Although the second agreement contained no condition subsequent, parol evidence was competent to show when the parties intended the agreement to take effect. *Golden Gate Corp.* v. *Barrington College,* 98 R.I. 35, 199 A.2d 586 (1964). As this court said in *American Underwriting Corp.* v. *Rhode Island*

*Hosp. Trust Co.*, 111 R.I. 415, 421, 303 A.2d 121, 124-25 (1973):

> "We have always adhered to the general rule that in the absence of fraud or mistake, parol evidence is not admissible for the purpose of varying, altering, or contradicting a written agreement. *Supreme Woodworking Co.* v. *Zuckerberg*, 82 R.I. 247, 107 A.2d 287 (1954). However, we have allowed parol evidence to demonstrate that the taking effect of instruments such as promissory notes, contracts of sale, or deeds was intended by the parties to be conditioned upon the performance of some future act or the happening of some subsequent occurrence. *Parrillo* v. *Siravo*, 101 R.I. 524, 225 A.2d 515 (1967); *Lopato* v. *Hayman*, 43 R.I. 271, 111 A. 529 (1920); *Lee* v. *Benjamin*, 40 R.I. 567, 102 A. 713 (1918)."

In the case at bar defendant testified that plaintiff told him that the second agreement would be similar to the first. This testimony, which the trial justice obviously accepted, was competent to support the trial justice's finding that the parties intended that the closing was not to take place unless the proposed office building was completed and defendant was able to relocate there.

As we have held so many times, this court does not disturb the findings of a trial justice sitting in equity unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue. *Belilove* v. *Reich*, 102 R.I. 250, 229 A.2d 775 (1967). On this record we cannot say that the trial justice's findings are clearly wrong or that he misconceived or overlooked any material evidence on a controlling issue.

Thus, in view of the trial justice's finding that the second agreement was not to take effect unless the office building was completed and defendant was able to relocate there, and in view of the further fact that there was no evidence that the proposed building had even been started, it is clear that the event on which the effectiveness of the

agreement depended never took place. *American Under-writing Corp.* v. *Rhode Island Hosp. Trust Co., supra; Parrillo* v. *Siravo,* 101 R.I. 524, 225 A.2d 515 (1967). This was sufficient to warrant denial of the relief requested and consequently we find no error in the trial justice's denial of plaintiff's request for specific performance. In the circumstances it is not necessary to discuss the validity of the reasons on which he based his decision.

The plaintiff's remaining arguments are without merit and therefore require no consideration here.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Nancy Ann Palmisciano,* for plaintiffs.

*Dominick A. St. Angelo,* for defendants.