Daniel CLARK et al.

v.

William T. BOWLER, Jr., in his capacity
as Executor under the Estate of
William T. Bowler.

No. 91–585–Appeal.

Supreme Court of Rhode Island.

April 15, 1993.

Christopher Behan, Joseph Palumbo, Jr.,
Middletown, Christopher Boyle, Newport,
for plaintiffs.

Keith B. Kyle, Marc DeSisto, Carroll,
Kelly & Murphy, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is a civil action in equity brought by the plaintiffs, the eight children of the late Geraldine M. Bowler (Gerri), seeking to impose a constructive trust upon certain real estate located at 36 Seastones Drive, Portsmouth, Rhode Island. Following a nonjury trial in Superior Court, the trial justice found that the plaintiffs had failed to satisfy their burden of proof and accordingly entered judgment for the defendant, William T. Bowler, Jr., the son of Gerri's second husband and the executor of his estate. The plaintiffs appeal from the Superior Court judgment. We affirm.

The subject property is a home built by Gerri and her second husband, William T. Bowler (Pete), and occupied by them, along with Gerri's children, from 1977 to 1987. The plaintiffs maintain that this custom-built home was understood by them and their mother to be the "Clark family home." Of particular importance to Gerri was that this home belong to the Clark children in the unfortunate event that anything happened to her or her husband. Furthermore, Gerri understood that Pete's children by a previous marriage would share in all of Pete's business ventures and his associated real estate interests but not in the real estate located at Seastones Drive. However, upon Pete's death one

year after Gerri's demise, defendant, as executor of his father's estate, reclaimed the Seastones Drive property. Gerri's belief that the Seastones Drive home would devolve to her children is the basis of plaintiffs' request to impose a constructive trust upon their former home.

The following facts were adduced at trial. In 1970 Gerri was divorced from plaintiffs' father and was awarded the family home, which was located at 18 Murphy's Lane in Scituate, Massachusetts. The uncontroverted testimony reveals that Gerri owned this home and paid its mortgage. At the time all eight children were minors residing with Gerri. In the years following her divorce, Gerri received child-support payments from her exhusband as well as some residual income from Casey & Hayes, a reputable moving company that was founded by her father and is currently operated by her brothers.

Approximately three years after her divorce, Gerri was vacationing with a friend when she met Pete, who was seventeen years her senior and in the midst of a divorce himself. Pete began to telephone Gerri at her home when they returned from vacation. Their budding relationship continued for two years, during which time Gerri and Pete would arrange to meet at places between Scituate, Massachusetts, and Newport, Rhode Island, where Pete resided. By 1975 Gerri and Pete considered getting married and living together in the Newport area as Pete had numerous ongoing business interests there. Gerri's primary concern in moving to the Newport area was uprooting her children, some of whom were involved in sports, theater, school government, and other community activities.

During the course of the trial six of the eight Clark children testified to the events that occurred just prior to and subsequent to their move to Rhode Island. Christopher Clark (Christopher), the third-oldest child and the duly appointed coexecutor of his mother's estate, stated that he first met Pete on a day trip to Newport to look at real estate in the area. Pete and Gerri showed Christopher a vacant lot in Portsmouth and informed him of their plans: Gerri would sell her Scituate home, she and her children would move into an interim home somewhere on Aquidneck Island, and Gerri and Pete would build a home on this waterfront lot. According to plaintiffs, this house was designed and constructed to be the Clark family home.

In August 1975 the Clarks did indeed vacate their home in Scituate, and Gerri and seven of her children moved into a house on Selina Lane in Portsmouth, which she had purchased for $40,000 from a friend of Pete's. The evidence of record indicates that $32,000 of the purchase price was secured by a private mortgage between Gerri and the owner of the property. The uncontroverted testimony also demonstrates that Gerri paid this mortgage from her own account that was separate and apart from Pete's account. Gerri and Pete were married on May 23, 1976, at which time Pete moved into the Selina Lane home.

As Gerri and Pete awaited the sale of her Scituate property, the construction of their new home on Seastones Drive was delayed. In December 1976 the Clarks' former residence was finally sold. The unrefuted testimony in the record reveals that Gerri utilized the entire amount of approximately $18,000 from this sale for expenses related to the construction of the house on Seastones Drive, which commenced in April 1977. In October of that year Gerri, Pete, and five of her eight children moved into this new home upon its completion. The Selina Lane property, owned solely by Gerri, was sold later that month. An Internal Revenue Service exhibit in the record entitled "Sale or Exchange of Personal Residence" indicates that the gain realized from the sale of this home figured in the calculation of the adjusted base upon which they would be taxed on their new residence.

In 1985 the unfortunate happened. Gerri was diagnosed with a rare form of leukemia at the age of fifty-one, and despite chemotherapy and blood-platelet transfusions, her condition deteriorated. In May 1986 Christopher was contacted by one of Gerri's physicians at Newport Hospital who

informed him that it was likely his mother would have to undergo emergency surgery. The physician suggested that Christopher immediately help his mother get her estate in order. Christopher thereafter spoke with his own corporate attorney, who arranged to have two colleagues meet Christopher at Newport Hospital to prepare Gerri's last will and testament. Gerri's will was executed on May 29, 1986.

At the request of one of the attorneys who drafted Gerri's will, Christopher sent his wife to the Portsmouth Town Hall to examine the recorded deeds to the Seastones Drive property, into which, as the record indicates, Gerri had contributed the aforementioned amount of money. The land deed and the mortgage deed revealed that Gerri had no ownership interest in the Seastones Drive home since she was listed only on the mortgage deed but not on the land deed. It is important to note that because Gerri remained hospitalized for roughly two weeks, Christopher did not bring this to his mother's attention. When she returned home, she was informed of this potential problem in ownership, to which she replied that there must be a mistake and she averred that she would confront Pete. The plaintiffs believe that Gerri signed the mortgage deed to the Seastones Drive home understanding that this document gave her an ownership interest in the property. Her understanding is underscored by the unrefuted testimony of Christopher and Daniel Clark and Joan Casey O'Conner, Gerri's sister. Each of these witnesses stated that Gerri was devastated when she learned she was not a record owner of the Seastones Drive property.

When Pete was unwilling to discuss the situation, it was suggested that Gerri meet with her brothers' attorney, George Cahill (Cahill), in Boston. In an apparent attempt to resolve this discrepancy, both Gerri and Pete met with Cahill in August 1986. According to Christopher, Gerri believed "Pete was coming up with something" after their meeting with Cahill. On October 11, 1986, Gerri died without Pete's having done anything with respect to his wife's understanding that her ownership interest

in the Seastones Drive property would be effectuated.

Pete continued to live in the Seastones Drive home with Colleen and Courtney Clark, the youngest of Gerri's children, until his death one year later. During this time Colleen's testimony reveals that, out of curiosity, she once queried how much the Seastones Drive home was worth on the real estate market. Pete responded and then concluded, "I would never put this house on the market. It's our home."

Upon Pete's death, plaintiffs filed a claim against their stepfather's estate with the Probate Court of the Town of Portsmouth. In their claim plaintiffs assert that Pete had promised and represented to their mother that the new home they constructed on property owned by Pete was hers so that upon her death her children would benefit. Further, plaintiffs contend that their stepfather had breached various duties and responsibilities toward their mother by failing to transfer the Seastones Drive property to her or her children. The defendant, as executor of his father's estate, disallowed plaintiffs' claim. The Clark children thereafter appealed this disallowance to the Superior Court in Newport County pursuant to G.L.1956 (1984 Reenactment) § 33-11-48, as amended by P.L. 1984, ch. 402, § 1.

 Upon the conclusion of a nonjury trial the trial justice filed a written decision in conjunction with an order entering judgment for defendant. In his decision the trial justice reviewed and discussed this court's decisions involving the imposition of constructive trusts. He correctly enumerated the necessary elements of proof required pursuant to our decision in *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I.1985), namely, the existence of a fiduciary relationship and a breach thereof. The trial justice then stated that plaintiffs bear the burden of proving by clear and convincing evidence (1) the existence of a fiduciary relationship between Pete and Gerri and (2) either a breach of some promise or an act involving fraud that occurred as a result of this confidential association. With respect to the first element, the court found that

"there was ample evidence presented which establishes the existence of a fiduciary relationship. There is little doubt that the Bowlers shared a close, loving relationship with each other. * * * [T]he plaintiffs all testified that their mother openly reposed a great deal of trust and confidence in her husband."

The plaintiffs agree with the trial justice's assessment of their mother's relationship with their stepfather. However, they maintain that with respect to the second element required to impose a constructive trust, the trial justice misconceived or overlooked material evidence on a controlling issue and was clearly wrong. *See Ruggieri v. City of East Providence*, 593 A.2d 55, 57 (R.I.1991); *Cahill v. Antonelli*, 120 R.I. 879, 884, 390 A.2d 936, 939 (1978). We disagree.

The plaintiffs contend that Pete retained legal title to the property as a result of a breach of the fiduciary relationship between himself and Gerri rather than by a fraudulent act. Upon reaching the factual issue of whether there was a breach, the trial justice reviewed the evidence in search of a specific promise made by Pete to Gerri upon which she relied to her detriment. The trial justice stated that

"plaintiffs have failed to clearly articulate exactly how and when the Seastones property was either obtained or retained, in violation of a fiduciary duty. The plaintiffs did not offer any evidence which is dispositive of whether Mr. Bowler promised to place [Gerri's] name on the deed of record. Even if the court were to assume that Mr. Bowler had an intent to place his wife on the deed to create some form of joint ownership, then the court would still be faced with having to speculate as to the exact nature of that tenancy. * * * The fact remains that the court has no evidence before it that there was an intent to transfer ownership of the Seastones property, nor is there any evidence of what type of tenancy would thereby have been created."

■ In reviewing the judgment of a trial justice sitting in equity, we do not disturb his or her findings unless they are clearly wrong or he or she misconceived or overlooked material evidence on a controlling issue. *Cahill*, 120 R.I. at 884, 390 A.2d at 939 (citing *Sarni v. Armada*, 118 R.I. 348, 356, 373 A.2d 822, 826 (1977); *Tefft v. Tefft*, 105 R.I. 496, 503, 253 A.2d 601, 605 (1969)). Our review of the record reveals that the trial justice was not clearly wrong in concluding that plaintiffs had failed to satisfy their burden of proof with respect to a breach of the fiduciary relationship. We believe the trial justice carefully weighed all the evidence before him, as demonstrated by his concern with speculating about the nature of Gerri's anticipated tenancy in the property. The trial justice did not err in finding that plaintiffs had failed to show by clear and convincing evidence that Pete had made a specific promise to their mother to convey the Seastones Drive property. He correctly denied plaintiffs the equitable relief sought.

■ The plaintiffs also contend that the trial justice erred in searching for the intent or the agreement between Pete and Gerri to transfer ownership of the property. In support of this assertion the plaintiffs suggest that the trial justice failed to realize the true nature of a constructive trust and the purposes for which it is used, namely, to redress a wrong or to prevent unjust enrichment. Our review of the trial justice's written decision, however, reveals that he did in fact acknowledge this court's opinion in *Desnoyers v. Metropolitan Life Insurance Co.*, 108 R.I. 100, 272 A.2d 683 (1971). In *Desnoyers* we stated that a constructive trust arises when a person who holds title to property is subject to an equitable duty to convey it to another if the holder of that property would be unjustly enriched if he or she were permitted to retain it. *Id.* at 112, 272 A.2d at 690. The trial justice also recognized that in *Desnoyers* this court denied the relief sought by the plaintiffs because there was no evidence that a promise had been made by the defendant to hold certain proceeds in trust for the plaintiffs. *Id.* at 113, 272 A.2d at 690. Therefore, we find that the trial justice was not clearly wrong in applying *Des-*

*noyers* to the case at bar and requiring that the plaintiffs prove the existence of an agreement or a promise, the breach of which would support the imposition of a constructive trust on the Seastones Drive property.

Accordingly the plaintiffs' appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of the case may be remanded to the Superior Court with our decision endorsed thereon.