William F. CONNOR et al.

v.

Paul J. SULLIVAN.

Paul J. Sullivan

v.

William F. Connor et al.

Nos. 2002–247–Appeal, 2002–248–Appeal.

Supreme Court of Rhode Island.

June 19, 2003.

Michael T. Eskey, Esq., for Plaintiff.

William E. O'Gara, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

These cases came before the Supreme Court on March 4, 2003, pursuant to an

order directing the parties to appear and show cause why the issues raised in these appeals should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we conclude that cause has not been shown. The issues will be summarily decided at this time.

As an initial matter, it was represented to this Court that these cases previously had been consolidated by the Superior Court. However, as will be addressed herein, there is no record that any motion to consolidate either was brought or granted by the Superior Court. Accordingly, we shall decide these cases as separate and independent claims.

In 1983, Paul J. Sullivan (Sullivan), purchased property at 11 Chartier Circle in Newport (property), and has resided there throughout these proceedings. In 1995, after suffering financial setbacks, Sullivan filed for bankruptcy. As an additional consequence, Sullivan was faced with the foreclosure of the mortgage on the Chartier Street residence. On November 2, 1995, Sullivan's then friend, William F. Connor (Connor), purchased the property at the foreclosure sale for $150,000. William F. Connor and his then wife, Sherry Kriss Connor (the Connors), secured a mortgage and took title to the property.[1] The Connors agreed to let Sullivan remain in possession of the premises for a monthly rental fee. Sullivan contended that before the mortgagee's sale, he and Connor orally agreed that Connor would purchase the home at the foreclosure sale for no more than $175,000, with the intended purpose of selling it back to Sullivan one to two years later after his finances improved. The Connors flatly denied that the parties had reached such an agreement.

In June 2000, Sullivan submitted to the Connors a written purchase and sales agreement for the property in the amount of $210,000, an adjusted figure that Sullivan contends was agreed upon after 1997. Connor not only rejected the offer, but presented Sullivan with a notice of termination of tenancy, demanding that Sullivan vacate the premises by August 1, 2000. Sullivan filed an action in Superior Court, seeking the imposition of a constructive trust alleging that the Connors had breached the alleged oral contract, had breached their fiduciary obligations as trustees, and had committed fraud. Besides requesting that a constructive trust be imposed for his benefit, Sullivan sought both money damages and a judgment directing the conveyance of the real estate to him. Significantly, Sullivan did not claim a jury trial.

On August 4, 2000, the Connors initiated a trespass and ejectment action (T & E), against Sullivan in the District Court. Judgment in the T & E was entered in favor of the Connors by stipulation on September 13, 2000. Sullivan filed a notice of appeal seeking a *de novo* trial in the Superior Court and asserted a counterclaim that mirrored his complaint in the constructive trust action, seeking conveyance of the property and damages for fraud and breach of fiduciary obligations. Sullivan demanded a jury trial for the T & E claim and his counterclaim.

Sullivan's constructive trust action was heard on July 24 and July 25, 2001, before a single justice of the Superior Court. Despite the assertion by the parties that the claims were consolidated, the trial justice elected to proceed with the constructive trust action first, reasoning that a determination of whether the evidence supported

---

1. Sherry Kriss Connor's name mistakenly was omitted from the deed conveying the property to William F. Connor, but her name later was added to the deed, in 1997.

imposition of a constructive trust would be dispositive of the T & E claim because the imposition of a constructive trust was Sullivan's primary defense to the T & E. Based on the equitable nature of the remedy sought and Sullivan's failure to claim a jury, the trial justice proceeded without a jury in the constructive trust trial. However, Sullivan voiced his concern that he was being deprived of the right to have a jury determine who was the rightful owner of the property in the T & E action, the only case in which he had demanded a jury trial. Although the court noted Sullivan's objections, the trial justice concluded that the constructive trust issue would determine both cases and denied Sullivan's request for a jury trial.

At trial, Sullivan presented the testimony of several witnesses who partially corroborated his contention that the Connors purchased the home at his request and for his benefit. The Connors denied that such an agreement ever had been reached. Connor admitted that Sullivan had made an offer to repurchase the home at a later date, but testified that the Connors had responded simply by stating, "keep your rent current so we don't have any problems and we'll see[.]" Furthermore, Sullivan conceded that a repurchase price was not agreed upon until ten to fifteen minutes *after* the foreclosure sale, and further acknowledged that he was unable for financial reasons to repurchase the property within the agreed-upon two-year period.

The trial justice granted judgment in favor of the Connors. In a decision[2] on December 18, 2001, the trial justice found that Sullivan failed to demonstrate by

clear and convincing evidence that the Connors defrauded him or that a constructive trust should be imposed to prevent unjust enrichment to Sullivan's detriment. Further, the trial justice concluded that there was no persuasive evidence that an agreement had been reached because there were no terms and conditions that were agreed upon by the parties. He found that any terms of repurchase that were agreed upon were established after the foreclosure sale, thus making the agreement subject to the statute of frauds. Additionally, even if an oral agreement could be found on the state of the record, the trial justice determined that Sullivan was unable to meet its terms within the two-year period that the parties purportedly agreed to. The trial justice concluded that the discussions between the parties were, at best, an "agree[ment] to agree[.]" Finally, he found that there was no evidence of record that Connor acquired the property at a price other that its market value and no suggestion that the foreclosure sale was not a fair sale.

A brief hearing on the T & E was held on March 5, 2002. Sullivan did not dispute the facts of the Connors' complaint, but reaffirmed his disputed defense of ownership. Notwithstanding, Sullivan conceded that his defense was barred by *res judicata* in light of the judgment in the constructive trust claim. Finding that Sullivan's only affirmative defense was a claim of ownership by way of constructive trust that previously was rejected, the trial justice entered judgment in favor of the Connors, granting them possession of the premises. Although Sullivan appealed

---

**2.** Judgment was entered in the constructive trust action on December 18, 2001. However, on February 21, 2002, by motion of Sullivan and with the Connors' objection, this judgment was vacated and reentered. In apparent reliance that judgment in the constructive trust action would not be entered before the forthcoming T & E, Sullivan was unaware that judgment had been entered on December 18, 2001, thereby missing the window in which an appeal could be brought. Sullivan made a timely appeal of the judgment upon the reentry of judgment in February. (*See* note 3, *infra.*)

from this judgment, he has not challenged the decision before this Court nor has he raised any issues respecting the propriety of the judgment in the T & E claim.

Sullivan timely appealed both judgments.[3] He contends that he was improperly denied his right to a jury trial as guaranteed by article 1, section 15, of the Rhode Island Constitution. To support this contention, he argues that because the two actions were consolidated, the legal claims of breach of fiduciary duty and fraud in the T & E action—the only case in which he demanded a jury trial—should have been decided by a jury before a trial proceeded on the equitable claim. He alleges that at no time did he waive his right to a jury trial in the T & E, which, he suggests, extended to the constructive trust action upon consolidation.

On the merits, Sullivan alleges that the trial justice's written decision failed to comply with Rule 52(a) of the Superior Court Rules of Civil Procedure because it was based on insufficient findings of fact. Additionally, Sullivan alleges that the trial justice overlooked or misconceived the ample evidence presented to support imposing a constructive trust.

 The Connors question the validity of Sullivan's claim that consolidation of the actions required a jury determination of the legal issues before a bench trial could be held on the equitable claim. Further, they question the scope of the consolidation on which Sullivan relies and deny that Sullivan's demand for a jury in the T & E extended to the constructive trust suit.

The Connors maintain that Sullivan was not entitled to a jury trial on the constructive trust action because he demanded a jury only with respect to the T & E. The Connors reject Sullivan's argument that consolidating the cases resulted in a generalized demand for a jury in both actions and contend that this issue was raised for the first time on appeal. The Connors argue that by electing to proceed with a bench trial and thereafter conceding that his defense to the T & E depended entirely on the equitable finding in the constructive trust case, Sullivan waived his right to a jury trial. The Connors argue that Sullivan voluntarily could have dismissed the constructive trust action and been heard first on the T & E and counterclaim with a jury, or he could have demanded a jury trial in the constructive trust action in the first instance.

We reject the parties' contention that these actions were consolidated. The only evidence before this Court with respect to consolidation are the assertions by counsel at a May 7, 2001 hearing on unrelated motions, during which the Connors' counsel stated, "This is a case you consolidated involving a *T & E and counterclaim complaint. I'm not sure of the constructive trust.*" (Emphasis added.) At the same proceeding, counsel for Sullivan stated, "It's consolidated. We haven't entered an order, but you ordered it consolidated."

After oral argument, this Court entered an order directing the parties to produce any and all pleadings and transcripts indi-

3. The Connors urge this Court to summarily deny and dismiss Sullivan's appeal of the constructive trust judgment because he failed to file a timely appeal from the original judgment of December 18, 2001, resorting instead to a motion to vacate pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure and appealing the reentered judgment of February 22, 2002. The Connors' assertion that Sullivan "circumvent[ed] time limits on appeal" are not properly before this Court and will not be addressed. The Connors failed to appeal the order vacating and reentering judgment and have presented no evidence to this Court to support the assertion that the motion was granted erroneously by the trial justice.

cating that a motion to consolidate these claims was filed in Superior Court, or record evidence that consolidation was ordered. Neither party has done so; we have not been provided with a written motion to consolidate nor a transcript demonstrating that an oral motion was granted by a justice of the Superior Court. The parties cannot rely on the bare assertion that the cases were indeed consolidated without any record support for their claims. Rule 7(b)(1) of the Superior Court Rules of Civil Procedure provides that:

"*Motions and Other Papers*

"(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial or during the course of a deposition, shall be made *in writing*, shall state with particularity the grounds therfor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion." (Emphasis added.)

*See also Tucker v. Kittredge*, 795 A.2d 1115, 1118 (R.I.2002) (per curiam) (the notice requirements in Rules 6(c) and 7(b)(1) of the Superior Court Rules of Civil Procedure are mandatory and intended to allow the opposing party sufficient time to prepare and present any objection a party may have to the requested relief). Although we recognize that Rule 7(b)(3)(ii) provides that a motion to consolidate "shall be deemed to be granted as a matter of course and shall not be placed on the motion calendar unless objection stating the particular ground therefor is served and filed" within three days of the date set for hearing, a party seeking consolidation is not relieved from filing a written motion in accordance with Rule 7(b)(1). Significantly in this case, the only time the issue of consolidation arose was during a hearing on Sullivan's motion to amend his complaint. Counsel for the Connors informed

the court that he understood that the T & E and Sullivan's counterclaim were consolidated by the trial justice, but he was "*not sure of the constructive trust.*" (Emphasis added.) Later, when the trial justice inquired about the T & E, Sullivan's counsel simply responded that "It's consolidated. We haven't entered an order, but you ordered it consolidated." Unfortunately, the parties have failed to produce a motion or a transcript as evidence that this assertion was correct. We deem the failure by the parties to produce a written application for a consolidation or a transcript as evidence that an oral motion was made and granted to be fatal to the claim that these cases were, in fact, consolidated for trial. The Superior Court did not treat these cases as consolidated, and we decline to do so for purposes of appeal.

██ Therefore, we reject Sullivan's contention that he was denied the right to a jury for the alleged legal claims underlying his constructive trust action. The simple fact is that Sullivan did not claim a jury trial in that case. We recognize that the right of trial by jury as declared by article 1, section 15, of the Rhode Island Constitution or as given by statute remains inviolate. *Van Cala v. Getty*, 770 A.2d 851, 853 (R.I.2001) (per curiam). However, the protections afforded by our state constitution as recognized by this Court, do not extend the right to a jury trial, but preserve it as it existed when the constitution went into effect in 1843. *Marks v. D.A. Davis Construction Corp.*, 536 A.2d 883, 886 n. 5 (R.I.1988) (citing *Dyson v. Rhode Island Co.*, 25 R.I. 600, 625, 57 A. 771, 782 (1904)). This state follows the rule of practice that any claims that could have been litigated in an action at law in 1843 must be submitted to a jury upon demand of a party. *Egidio DiPardo & Sons, Inc. v. Lauzon*, 708 A.2d 165, 172 (R.I.1998) (citing *Maryland Casualty Co. v. Sasso*, 98 R.I. 483, 490, 204 A.2d 821,

825 (1964)). Rule 38(b) of the Superior Court Rules of Civil Procedure, requires that a party "demand a trial by jury of any issue triable of right by a jury * * * [.]" No demand was made in the claim for a constructive trust. Therefore, "we need not determine what might have followed had * * * [Sullivan] ever claimed a jury trial[.]" *Tinney v. Tinney*, 770 A.2d 420, 437 (R.I.2001). It is not the function of this Court to speculate about what might have happened if Sullivan had claimed a jury trial in the first instance. *Id.*

■ Nor are we convinced that Sullivan was denied his constitutional right to a jury in the separate T & E, for which he made a demand in his answer and counterclaim. We recognize that the legal issues rooted in the complaint for the Connors' trespass and ejectment action and Sullivan's counterclaim may have entitled Sullivan to a jury trial.[4] *See Mathewson v. Ham*, 21 R.I. 311, 43 A. 848 (1899) (recognizing that in 1843 the right to a jury trial existed for an action similar to the modern trespass and ejectment action). However, by conceding defeat when the T & E proceeding began Sullivan effectively waived his right to a jury trial. Counsel for Sullivan informed the trial justice that,

> "In today's case, which is a T and E, the issue is ownership. And your Honor determined that issue in the other case. And the other issue was whether or not we were entitled to a jury trial, and you ruled * * * [that the constructive trust] is an action in equity, and there is no right to a jury trial in this particular case. * * * Our defense all goes to the

issue of constructive trust * * * [and] we do not deny that * * * Mr. and Mrs. Connor[] are the record owners as alleged."

Thereafter, the trial justice ruled in favor of the Connors, noting that there were no disputed facts in the T & E, and that Sullivan's only affirmative defense of a constructive trust had failed in the previous proceeding. The trial justice based this ruling upon representations by Sullivan that no disputed issues remained. Any denial of a right to jury in the T & E is strictly attributable to Sullivan's own choice of trial strategy and his concession that he was precluded from pursuing the legal issues asserted in his counterclaim by the dictates of the doctrine of *res judicata*. Whether or not these claims were consolidated, once the trial court found that Sullivan failed to prove entitlement to a constructive trust by clear and convincing evidence and that the statute of frauds defeated his contract claims, the *res judicata* bar extended to his claims of fraud and breach of contract in the T & E action.

■ Turning to the merits of the trial justice's decisions, contrary to Sullivan's argument that the trial justice failed to make the requisite findings of fact, we are of the opinion that adequate factual findings to support the judgment are included in the trial justice's written decision. Nor are we satisfied that the trial justice overlooked or misconceived the evidence as alleged by Sullivan.

---

**4.** We are careful to note that if Sullivan was not entitled to a jury trial based on the claims asserted in the T & E, he would not necessarily have been afforded the right to jury trial simply because he asserted legal components in his counterclaim. *See Tilcon Gammino, Inc. v. Commercial Associates*, 570 A.2d 1102, 1107–08 (R.I.1990) (rejecting the notion that a legal counterclaim should recharacterize an equitable action to a legal action demanding a right to a jury trial, and suggesting that the option of filing an independent action is readily available, and that counterclaimants therefore cannot assert that their rights to a jury trial were denied).

This Court will not disturb the findings of a trial justice sitting in equity unless he or she clearly was wrong or misconceived or overlooked material evidence. *Clark v. Bowler*, 623 A.2d 27, 30 (R.I.1993) (citing *Cahill v. Antonelli*, 120 R.I. 879, 884, 390 A.2d 936, 939 (1978) and *Sarni v. Armada*, 118 R.I. 348, 356, 373 A.2d 822, 826 (1977)). A party challenging the finding of a trial justice sitting without a jury bears a heavy burden. *In Re Paul M.*, 626 A.2d 694, 695 (R.I.1993) (per curiam). A decision in a nonjury civil trial does not require exhaustive analysis of the evidence; "if the decision reasonably indicates that [the trial justice] exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses" it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law. *Id.*

Mindful that Sullivan had the burden of proving by clear and convincing evidence that a constructive trust was warranted, *Clark*, 623 A.2d at 29, the trial justice properly weighed the evidence and concluded that there "was not a clear declaration of trust nor persuasive evidence to suggest that an agreement had been reached by the parties as to the terms and conditions of a trust." The finding that Sullivan had failed to meet this burden was well-reasoned and sufficiently connected to the facts presented at trial. The trial justice correctly determined that a party claiming a constructive trust must prove the existence of a fiduciary relationship and either a breach of a promise or an act of fraud that occurred as a result of the relationship. *Clark*, 623 A.2d at 29 (citing *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I. 1985)). The trial justice found that Sullivan failed to prove either a promise or an act of fraud. He carefully weighed the evidence before him, and set forth a detailed breakdown of the instances in which an agreement was alleged to have been made, noting the vagaries of proof for an initial agreement and the lack of anything in writing to memorialize any agreement allegedly reached after the foreclosure sale. The trial justice concluded that the alleged contract between the parties was "at best a parole agreement [made after the sale was finalized] and is not the type of alleged fraud as to remove this case from the requirements of the statute of frauds[.]" Further, he concluded that even if an enforceable oral agreement was proven by the evidence, Sullivan acknowledged, through his own testimony, that he had failed to meet its terms within the two-year period that the parties purportedly had agreed upon.

We are satisfied that based on the weight of the evidence before him, the trial justice did not err in finding that, although Sullivan had recruited the Connors to purchase the property for his benefit, the defendant William F. Connor's conduct, although questionable ethically, was not legally actionable. We defer to this finding and the decision will not be disturbed.

For the reasons stated herein, Sullivan's appeals are denied and dismissed and the judgments are affirmed. The papers in this case are remanded to the Superior Court.

Justice FLAHERTY did not participate.